In the Matter of the Proceedings for the Disbarment of ARTHUR E. CLARK, an Attorney and Counselor at Law, Appellant.

## FRANK O. BAILEY, Respondent.

1. CHAMPERTY — EMPLOYMENT OF LAYMAN BY ATTORNEYS TO PROCURE CLIENTS A MISDEMEANOR AND WARRANTS FORFEITURE OF OFFICE. Section 74 of the Code of Civil Procedure, prohibiting attorneys or counselors from procuring retainers by offering or giving any valuable consideration therefor, not only prohibits them from giving it to a desired client for the purpose of obtaining his claim to bring suit upon, but also from paying or agreeing to pay any layman; out of the prospective profits of cases, for services in inducing desired clients to place their claims in the attorneys' hands for enforcement; such conduct is champertous and subjects the offending attorney to punishment as for a misdemeanor and also to removal from his office. (§ 75.)

2. MALPRACTICE — CODE CIV. PRO. § 67. An attorney who, in order to secure his own compensation, settles with the party against whom he has been retained to enforce claims, assigns his contracts of retainer, and notifies his clients to settle directly with such party, agreeing that to the extent of his ability he will facilitate any settlement that the latter may desire to make, is guilty of malpractice under section 67 of the Code of Civil Procedure.

*Matter of Clark*, 108 App. Div. 150, affirmed.

(Argued January 10, 1906; decided March 13, 1906.)

APPEAL from an order of the Appellate Division of the Supreme Court in the fourth judicial department, entered October 11, 1905, confirming the report of a referee and directing the removal of the appellant herein from the office of attorney and counselor at law.

This proceeding is based upon eleven charges of misconduct preferred by Frank D. Bailey, of Syracuse. The appellant interposed an answer and the matter was referred to the Hon. Charles A. Hawley, of Seneca Falls, to take the proofs therein and report the same to the Appellate Division, together with his opinion thereon. The referee reported that eight of the charges had been fully established by the evidence, but as to three others (those numbered VI, VII and XI), while they

were proved to be true in fact, the facts thus proved did not constitute wrongful conduct on the part of the attorney. The Appellate Division confirmed the referee's report and made the order of disbarment from which the present appeal is taken.

*Adelbert Moot, William C. Watson* and *Arthur E. Clark* in person for appellant. The facts alleged, proved and found do not constitute champerty. (*Sedgwick* v. *Stanton*, 14 N. Y. 289; *Coughlin* v. *N. Y. C. & H. R. R. R. Co.*, 71 N. Y. 74; *Hirschbach* v. *Ketchum*, 5 App. Div. 324; *Matter of Fitzsimons*, 174 N. Y. 22.) The settlement of Mr. Clark, and getting counsel fees or costs, do not constitute cause for disbarment within section 67 of the Code of Civil Procedure. (*Lytle* v. *Crawford*, 69 App. Div. 273.)

*Bayard J. Stedman, Seldon S. Brown* and *Frank E. Young* for respondent. The agreements with Snell that he should secure contracts from third persons authorizing Clark to proceed to bring actions on the claims, and that the proceeds should be divided between the defendant and Snell, constituted champerty. (Code Civ. Pro. § 74; *Hirschbach* v. *Ketchum*, 5 App. Div. 324.) The finding of the referee that Clark settled with the Central New York Telephone and Telegraph Company; assigned his retainers to the general manager of the company; received the sum of $3,000, and appropriated the same to his own use, except such amount as he turned over to his agent Snell, and that by so doing he committed a fraud upon each of his clients, was sufficient to warrant the order of disbarment. (Code Civ. Pro. § 67.)

WILLARD BARTLETT, J. This is a melancholy case, resulting in the destruction of the professional career of an educated lawyer who for many years appears to have enjoyed an excellent reputation and the general esteem of the community in which he has lived. It demands and it has received the most scrupulous and careful attention of the courts in

considering the evidence offered in support of the charges and the proper and necessary inferences to be drawn from the proof. The essential facts are uncontroverted, and they lead unquestionably to the painful conclusion that the appellant ought not to be allowed to practice law any longer.

I do not propose to discuss in detail the evidence which has convinced the referee and the Appellate Division of the truth of all of the eight charges which they have declared to be established; but as to two of them, there are reasons why some observations may well be added to what was said in the court below.

The fifth charge involves an accusation of champertous conduct, in violation of the provisions of section 74 of the Code of Civil Procedure, and the proper construction and application of that section are subjects of great interest and practical importance to lawyers throughout the state. The tenth charge, which is practically a charge of selling out his clients, presents so clear a case of premeditated moral turpitude in his professional relations, on the part of the appellant, that a brief consideration of the proof by which it is sustained will suffice to demonstrate that no injustice would have been done if his disbarment had been based upon that charge alone.

The fifth charge is as follows: " That in or about the years 1896 and 1897 the said Arthur E. Clark entered into certain contracts with one Charles A. Snell, by the terms of which he employed the said Snell to procure persons throughout the State of New York to retain and employ said Clark to commence actions against different telephone and telegraph corporations, and in and by said contracts the said Clark promised and agreed to pay said Snell for inducing said persons to place such claims in his hands for collection and for the purpose of bringing actions thereon; that, in pursuance of said contract, the said Snell did procure persons to the number of over two thousand to employ said Clark as attorney as aforesaid; and that said Clark paid to said Snell large sums of money on account thereof; that said contracts were in viola-

tion of sections 74 and 75 of the Code of Civil Procedure of the State of New York."

The referee reported to the Appellate Division that in his opinion the proofs abundantly sustained this charge. In 1896 Mr. Clark entered into an oral agreement with Mr. Charles A. Snell, who was not an attorney, whereby Snell undertook to induce persons having claims against telegraph and telephone companies on account of the erection of poles in the highways upon which they owned lands to place such claims in the hands of Clark for prosecution. Clark agreed to pay Snell three dollars, and subsequently five dollars for each claim so procured. Snell obtained about one hundred claims at three dollars, and about three hundred at five dollars. Then Clark and Snell entered into the following contract in writing:

"It is agreed by and between Arthur E. Clark and C. A. Snell both of Batavia, Genesee County, New York, that said Snell shall work for the said Clark in getting telephone and telegraph contracts in the same manner as he has done heretofore, and that said Clark agrees to pay him one-half of the proceeds realized by said Clark on account of said claims; said Snell is to pay his own expenses while he is out soliciting the said claims; said Clark is to pay his own expenses while he is out settling, and in case said Snell goes out to settle them, said Clark is either to pay said Snell's expenses while he is out or said Clark is to see that said Snell's expenses are paid by the company or companies. Said Clark is to have the right to hire other men to do the same work provided he cares to do so. Said Snell is to have the right to employ men to work under him, but said Clark is to have the same share in the proceeds of their work.

" Dated *February 22nd*, 1897.

"ARTHUR E. CLARK.
"C. A. SNELL."

For use by Snell under this contract a printed blank for the retainer was prepared, for execution by Mr. Clark and the

land-owner in each case, when the blanks were filled out, in which provision was made for specifying the land-owner's claim for damages at so many dollars per pole, so many dollars for mutilating shade trees and so many dollars for mutilating fruit trees, and whereby Clark agreed to accept from the land-owner ten per cent of the damages recovered from the company to be proceeded against, in full compensation for his services. In some cases the stipulated compensation was more than ten per cent. About two thousand claims were obtained by Snell and his agents under this contract and turned over to Clark, who paid Snell a large sum of money in the aggregate for his services in procuring the same. Most of the claims appear to have been settled without suit, although the referee reports that suits were brought upon some of them.

Upon these facts, as to which there is no substantial dispute, the question of law is whether Mr. Clark can be deemed to have violated section 74 of the Code of Civil Procedure. To quote the language of his learned counsel upon this appeal : " It is claimed that it is champerty for a lawyer to hire a local collector and an insurance agent, like Snell, to visit farmers and get their written contracts authorizing an attorney like Mr. Clark to bring actions of ejectment for them, with an agreement to give the attorney from ten to thirty per cent of the amount collected in such actions." He denies that such conduct on the part of an attorney is forbidden by the laws of this state, and it is now incumbent upon this court directly to decide whether it is or not.

Champerty, under the law of England, was an agreement to assist another in prosecuting a suit in consideration of receiving a share of the sum or property recovered. As recently as 1873 it was defined by BLACKBURN, J., as " a bargain whereby the one party is to assist the other in recovering property and is to share in the proceeds of the action," and was declared to be illegal under the English law. Blackstone makes it an element of the offense that " the champertor is to carry on the party's suit at his own expense " (4 Blackst. Com.

135), but this is not the uniform view of the writers on elementary law as was pointed out by the Supreme Judicial Court of Massachusetts in *Lathrop* v. *Amherst Bank* (9 Metc. 489, 492).

Whatever may have been the law of champerty in this state prior to that time, it became wholly comprised in the Revised Statutes upon their enactment in 1827 and 1828. Judge SAMUEL L. SELDEN, writing for this court in 1856, said that "not a vestige of the law of maintenance, including that of champerty, now remains in this State except what is contained in the Revised Statutes." (*Sedgwick* v. *Stanton*, 14 N. Y. 289, 301.)

These provisions of the Revised Statutes material to the present discussion were as follows :

"§ 72. No attorney, counsellor or solicitor, by himself, or by or in the name of any other person, either before or after suit brought, shall lend or advance, or agree to lend or advance, or procure to be lent or advanced, any money, or any bond, bill of exchange, draft or other thing in action, to any person, as an inducement to the placing, or in consideration of having placed, in the hands of such attorney, counsellor or solicitor, or in the hands of any other person, any debt, demand or thing in action, for collection.

"§ 73. Every attorney, counsellor or solicitor, who shall violate either of the two last preceding sections, shall be deemed guilty of a misdemeanor, and on conviction thereof, shall be punished by fine or imprisonment, or both ; and he shall also be removed from office in the several courts in which he is licensed." (2 Rev. Stat. 288, §§ 72, 73.)

The effect of these sections upon contracts between attorney and client was considered in *Coughlin* v. *N. Y. C. & H. R. R. R. Co.* (71 N. Y. 443, 452) in the light of the language of section 303 of the then existing Code of Procedure, providing that " all statutes establishing or regulating the costs or fees of attorneys, solicitors and counsel in civil actions, and all existing rules and provisions of law restricting or controlling the right of a party to agree with an attorney, solicitor

or counsel for his compensation are repealed; and hereafter the measure of such compensation shall be left to the agreement, express or implied, of the parties." Referring to the sections of the Revised Statutes which have been quoted, Judge EARL declared that they had not been abrogated by the above provision from the Code and went on to say:

"These sections of the Revised Statutes and the Code are in perfect harmony. An attorney may stipulate with his client for any compensation they may agree upon, and such compensation may be absolute or contingent; but he may not purchase a claim for prosecution, and he may not advance, or agree to advance, any money for the purpose of inducing a party to place a claim in his hands for collection. Now what was done here? One of the attorneys went to the plaintiff, and, for the purpose of inducing him to place the claim in his hands for prosecution, agreed not only to render the services, but also to advance all the money needed to carry on his suit. This, within the meaning of the statute, was an agreement to advance money to the plaintiff. The agreement was a plain violation of the statute, and if such agreements are allowed the purpose of the statute would be in a great degree defeated."

In 1876 the legislature transferred into the Code of Civil Procedure the substance of sections 72 and 73 of 2 Rev. Stat. 288, now to be found embodied in that Code as follows:

" § 74. An attorney or counsellor shall not, by himself, or by or in the name of another person, either before or after action brought, promise or give, or procure to be promised or given, a valuable consideration to any person, as an inducement to placing, or in consideration of having placed, in his hands, or the hands of another person, a demand of any kind, for the purpose of bringing an action thereon. *But this section does not apply to an agreement between attorneys and counsellors, or either, to divide between themselves the compensation to be received.*

" § 75. An attorney or counsellor, who violates either of the last two sections, is guilty of a misdemeanor; and, on convic-

tion thereof, shall be punished accordingly, and must be removed from office by the Supreme Court."

The last clause of section 74, which has been placed in italics, was not in the section as originally enacted, but was added by chapter 542 of the Laws of 1879.

Section 136 of the Penal Code provides that an attorney or counselor who violates "section 74 of the Code of Civil Procedure relating to certain promises and gifts," is guilty of a misdemeanor.

As construed by the learned Appellate Division the agreement between the attorney and the lay agent whom he employed to procure retainers for him contemplated the payment of the agent out of the profits to be derived by the attorney in the prosecution of the claims. The statute forbids the promise or gift of a valuable consideration to any person as an inducement to placing a claim for prosecution in the hands of an attorney. The effect of the decision below is to hold that section 74 of the Code of Civil Procedure not only prohibits a lawyer from offering or giving any valuable consideration to a desired client for the purpose of obtaining his claim to bring suit upon, but also forbids the lawyer from paying or agreeing to pay any layman out of the prospective profits of the case for services in inducing a desired client to place his claim in the attorney's hands for enforcement. In behalf of the appellant it is contended that this construction is incorrect and that the section seeks only to prohibit the offer or gift from an attorney to *the person having the claim* — that is to say, to the desired client — as an inducement to the retainer. These are radically different views and upon that which this court shall adopt depends the disposition of this branch of the present case.

The cases relied upon to support the determination of the Appellate Division are *Hirshbach* v. *Ketchum* (5 App. Div. 324) and *Irwin* v. *Curie* (171 N. Y. 409). In the first of these cases it appeared that the plaintiff (who was not shown to be an attorney) procured the employment of the defendant (who was an attorney) by a certain firm, to prose-

cute claims in their behalf, in consideration of receiving fifty per cent on the recovery; and that the defendant had agreed to pay to the plaintiff one-half of the compensation which he should thus become entitled to receive as attorney. This contract was declared by the Appellate Division of the first department (speaking through RUMSEY, J.) to be precisely within the prohibition of the statute (section 74 of the Code of Civil Procedure). "It appears necessarily from the allegations of the complaint," said Mr. Justice RUMSEY, "that he [the defendant] is an attorney and that the plaintiff procured his employment for the purpose of prosecuting and recovering certain claims. The thing which the statute forbids is to procure one's employment for the purpose of bringing an action upon a claim or demand."

In *Irwin* v. *Curie* (171 N. Y. 409) the contract was between a layman and an attorney and provided that the layman was to procure the attorney to be employed by certain importers to prosecute their claims against the United States government, upon contingent fees of fifty per cent which were to be equally divided between the layman procuring the employment and the attorney prosecuting the claims. The layman sued the attorney for his half of the contingent fees under the agreement. The Appellate Division in the second department held that he could not recover because the contract was in violation of section 74 of the Code of Civil Procedure and the parties stood *in pari delicto* (56 App. Div. 514). In this court the judgment of the Appellate Division was reversed solely on the ground that the prohibition of section 74 of the Code of Civil Procedure is directed against the attorney alone and, therefore, the parties did not stand *in pari delicto*. The discussion in the opinion of Chief Judge PARKER does not question the correctness of the decision below to the effect that the statute forbade the payment of money by a lawyer to a lay agent to procure claims for the lawyer to prosecute, and clearly assumes that proposition to have been correctly decided. Thus, he says (171 N. Y. page 412): "It will be observed that this statute does not provide that

such a contract shall be wholly void, nor does it in terms purport to operate upon a layman who may be persuaded to procure business for an attorney because of the latter's promise to divide the profits with him. Its prohibition is directed against the attorney and counselor, who is an officer of the court, and the very next section (75) provides that 'an attorney and counselor who violates either of the last two sections is guilty of a misdemeanor.' Here again we note that the penalty inflicted is upon the attorney and counselor alone and not upon his accomplice or possibly intended victim."

In these three decisions, then, two in the Supreme Court and one in the Court of Appeals, we have a distinct recognition of the applicability of section 74 of the Code of Civil Procedure to a case in which the attorney pays money, not to a claimant, to procure a retainer from him, but to a lay agent to exert his influence upon the claimant to induce the latter to employ the attorney. In *Irwin* v. *Curie* (*supra*) the Court of Appeals did not question the correctness of the decision of the Appellate Division in this respect. I participated in that decision, and I am not convinced that it was in this respect incorrect. *Matter of Fitzsimons* (174 N. Y. 15) decides nothing to the contrary. There, the agreement under consideration was one whereby the attorney was to be paid one-half of the money which should be realized in the proposed litigation, out of which he was to compensate another attorney associated with him in the case. This was held not to be champertous under the Code. "Under section 74," said MARTIN, J., "an attorney may agree upon his compensation, his agreement may be contingent upon his success and payable out of the proceeds of the litigation, and such contracts are not illegal but are continually enforced. With the question whether the statute permitting such contracts is wise or otherwise we have nothing whatever to do. Such is the law and if the agreement made by the appellant is within its protection it is valid and it is the duty of the courts to enforce it." These observations do not help the appellant here. His counsel, however, quotes the following passage, which occurs further on, in

Judge MARTIN's opinion in the *Fitzsimons* case, as bearing upon the question under discussion :

"The contract in no respect induced or protracted the litigation. The appellant stirred up no strife, induced no litigation, but merely agreed to take for the compensation of himself and his associate who was present at the time of the agreement and presumptively consented to it, one-half of the recovery, to be divided between them as they should. agree. The contention that this agreement was within the prohibition of section 74 and therefore void, cannot, we think, be upheld."

I think this passage has a significance which is unfavorable rather than favorable to the construction of the statute contended for by the appellant. It assumes that *the statute was intended to prevent the promotion of litigation ;* and if such be its purpose that purpose could hardly be accomplished more effectively than by prohibiting attorneys from employing paid agents to find claims for them to prosecute.

"The compensation of an attorney or counselor for his services is governed by agreement express or implied, which is not restrained by law." (Code Civ. Pro. § 66.) Citing this section as his authority, the learned counsel for the appellant argues that "the statute leaves Mr. Clark as free as the winds to thus hire persons upon commission or otherwise to go out and get contracts of retainer, provided always they do not give or promise any inducement of any kind to the person from whom they get them." But section 66, while providing that the agreement between an attorney and client as to the former's compensation is not restrained by law, does not provide that the methods whereby such agreement is obtained by the attorney are not subject to legal restraint. On the contrary, such methods are distinctly limited by section 74, as indeed is conceded by the argument which has been quoted, in so far as it admits that the offer or gift of a valuable inducement by the attorney to the desired client would be champertous. But section 74 prohibits such offer or gift "to any person," and it seems to me that it would be judicial

legislation, in view of the intent of the enactment, to limit the phrase so as to read, " to any person owning the demand to be sued upon."

It is said that the law permits attorneys to solicit business, and hence that there is no valid reason why they should not be permitted to pay agents to solicit business for them.    But for nearly a century the law has prohibited them from obtaining retainers by offering or giving any valuable inducement whatever to the desired clients themselves, for the plain reason that such conduct tends to stir up litigation which might not otherwise arise and because needless litigation has always been deemed a public evil.    It is equally manifest that the employment of paid agents has the same tendency.    Where, as in the case at bar, the remuneration of the agent depends upon the number of retainers he procures, the strongest motive exists on his part to incite the assertion and prosecution of claims that might otherwise never be heard of.    Nor is there anything in the suggestion that the employment of such paid emissaries is essential to the protection of the poor, who else might not become aware of their right to prosecute remedies in the courts for wrongs which they may have suffered.    The permission which the law now gives to attorneys to serve clients for a contingent fee is sufficiently well known throughout the community to enable any one, however limited his means, to secure adequate professional service in the enforcement of any meritorious claim in the courts.    It is not necessary for the protection of the poor to sanction the practice which, as applied to negligence cases under the name of " ambulance chasing " has brought deserved discredit upon those engaged in it; and in any event, if the views which have been expressed are correct, the law denounces the practice as criminal.

The tenth charge, upon which the order of removal is founded in part, reads as follows: " That, among the claims secured to be placed in the hands of the said Arthur E. Clark for collection, or suit, were a large number of claims against the Central New York Telephone and Telegraph Company.

That said Clark presented said claims to said company and settled the same upon receipt from said company of the sum of three thousand dollars, all of which he appropriated to his own use, except such sums as he turned over to the said Charles A. Snell for procuring him to be retained by the several claimants. That, by so doing, the said Arthur E. Clark committed a fraud against each of the several clients and persons represented by him, and who had claims against said telephone company."

Having secured through the agency of Snell, under the contract of employment already set forth, upwards of three hundred claims against the Central New York Telephone and Telegraph Company, the appellant appears to have had an interview in regard to them with a representative of the corporation, after which he wrote to the general manager the following letter:

"BATAVIA, N. Y., *March* 1, 1898.
" Mr. C. A. NICHOLSON,
           " *Gen. Mgr., Central New York Telephone Co.,*
                      Auburn, N. Y.:

" DEAR SIR.— As the result of our conversation in Rochester I make you the formal proposition in regard to the cases I now have against your company.

" 1. You are to pay me $25 for each case I now have against your company, and which you settle under the terms of our agreement.

" 2. You are to have the privilege of settling them at your own terms and figures as far as possible.

" 3. I am to write conciliatory letters to all who write asking about settlements, and to aid in every way possible in making these settlements, but I am to retain my hold over my clients as far as possible so that they will not go to other attorneys.

" 4. Payments to be made as follows to me : $1,000 within ten days from date; $500 within three months; $500 within six months.

" 6. A settlement to be made at the end of the year, in which

your company is to give me the name of each case arranged, and you are to pay me the balance due on the cases settled. We will then arrange a plan for settling the balance. This is about the way I think the matter had better be adjusted. I may tell you that the Empire State people have arranged their cases on this basis, and that they have been settling them so that neither they nor I have had any trouble. I have written and do write to my clients every few days telling them they had better settle if the company is disposed to do what is fair, and either I hear nothing from them or sometimes my clients write that they have settled.

" Believe me very truly yours,

"ARTHUR E. CLARK.

" P. S. Of course you understand the necessity of not showing this letter or letting the contents be known."

After some further negotiations the appellant and Snell addressed the following communication to the manager of the telephone company :

"BATAVIA, N. Y., *Aug. 29th*, 1898.

"Mr. C. A. NICHOLSON, *Gen. Mgr.*,

" *Central New York Tel. & Tel. Co.*,

" Utica, N. Y. :

" DEAR SIR.— Mr. Snell and myself make you the following offer in regard to the settlement of the claims we have against your company :

" You are to pay me in all three thousand dollars. Fifteen hundred dollars at the time this agreement is made and one-half the balance when fifty per cent of the claims are settled and within one year from date.

" The balance of the money to be paid within two years from date and when seventy-five per cent of the claims are settled.

" The payment of fifteen hundred dollars to be made on or before September 1, 1898.

" I am to help you in the settlement of these cases as far as I am able and yet keep my clients with me.

"That is it will not do for me to say or do anything that will drive them away. And neither Snell nor myself are to take any more claims against your company or to foster any litigation against it.

"Yours very truly,

"ARTHUR E. CLARK,

"C. A. SNELL."

This offer appears to have been accepted, and on September 9, 1898, the appellant received $1,000 from the treasurer of the telephone company, and $2,000 more was subsequently paid. The appellant under date of July 23, 1901, executed a paper purporting to be an assignment to the general manager of the telephone company personally "of all my right, title and interest of every kind 'and description in and to the contracts I have with the various land-owners against the Central New York Telephone and Telegraph Company for damages through the erection of poles, trimming trees, etc." Annexed to this paper were the names of the parties from whom the appellant had obtained the contracts of retainer.

The referee finds that the telephone company thereafter settled with only twenty-two out of the three hundred clients of the appellant.

The character of this transaction cannot be better stated than by quoting the language of the learned referee where he says :

"Thus it appears, first, that Clark settled with the company for his own compensation and turned his clients over for settlement to the very company as against which he had been retained to enforce settlement. And not only that, but agreed to facilitate to the extent of his ability the settlement which the company might desire to make and ultimately actually transfer to the company the contracts and retainers which he had taken against it. In other words, after securing for himself a large amount of money, he deliberately threw over to the enemy and abandoned his clients, and later transferred to the hostile party the retainers which he had procured to enable him to enforce his clients' right against it. I cannot

conceive of a more complete abandonment and overthrow of his clients by a lawyer, and I am persuaded that this transaction as to each of his clients was a fraud of the most reprehensible character."

In addition to this it may be observed that an assignment by the attorney for a claimant of his contract of retainer to the very party whom he has been retained to sue is a new and remarkable curiosity in the law, irrespective of the moral aspects of the transaction.

There cannot be any doubt, I think, that the evidence establishing this tenth charge makes out a case of malpractice within the meaning and intent of section 67 of the Code of Civil Procedure.

There was no error prejudicial to the appellant in any of the rulings of the referee to which our attention has been called; his conclusions are amply supported by the proofs; and the order of disbarment should be affirmed.

C<span>ULLEN</span>, Ch. J., O'B<span>RIEN</span>, H<span>AIGHT</span>, V<span>ANN</span> and W<span>ERNER</span>, JJ., concur; H<span>ISCOCK</span>, J., not sitting.

Order affirmed.