In the Matter of LOUIS ROTHBARD; an Attorney.

Second Department, February 4, 1929.

*Mortimer W. Byers,* for the motion.

*Frank W. Holmes,* opposed.

LAZANSKY, P. J. Respondent, who was admitted to practice in 1917, admits that for a considerable period he had in his employ men who were engaged in " ambulance chasing " in his behalf, and that they shared with him the fees obtained as a result of handling the cases. It also clearly appeared that physicians were paid by respondent for recommending cases to him. He claims that he ceased " the business of ambulance chasing " in 1926. The referee refused so to find. He might have done so were it not for a more serious charge against the respondent. The referee, on the basis of proof which clearly shows the fact, found, in effect, that respondent endeavored to thwart and impede the investigation conducted by Mr. Justice FABER under order of this court. It is not necessary to go into details. Witnesses testified to the fact, and it was denied by respondent and his friends. The very nature of the meeting place the night before the investigation, in an automobile on a side street, indicates the likelihood of a scheme on the part of respondent to have witnesses testify that they did not know him, when, as a matter of fact, they did. On the morning following this meeting, one of the witnesses testified at the investigation that he did not know the respondent. In the afternoon he recanted and stated that he not only knew the respondent but had taken a part in recommending cases to respondent for which he had been paid. Respondent's attempted explanation, of itself, condemns him. Respondent concedes that he is guilty of a violation of subdivision 2 of section 274 of the Penal Law, which provides:

" An attorney or counselor shall not:  *  *  *

" 2. By himself, or by or in the name of another person, either before or after action brought, promise or give, or procure to be promised or given, a valuable consideration to any person, as an inducement to placing, or in consideration of having placed, in his hands, or in the hands of another person, a demand of any kind, for the purpose of bringing an action thereon, or of representing the claimant in the pursuit of any civil remedy for the recovery thereof. But this subdivision does not apply to an agreement between attorneys and counselors, or either, to divide between themselves the compensation to be received."

He has failed to give heed to that part of canons 27 and 28 of the Canons of Ethics of the American Bar Association, adopted by the Bar Association of the State of New York, which provides:

" 27. * * * It is equally unprofessional to procure business by indirection through touters of any kind * * *.

" 28. * * * It is disreputable * * * to breed litigation by seeking out those with claims for personal injuries or those having any other grounds of action in order to secure them as clients, or to employ agents or runners for like purposes, or to pay or reward, directly or indirectly, those who bring or influence the bringing of such cases to his office * * *."

It is the fact, and the official referee has found in effect, although in language rather gentle, that respondent was guilty of an attempt to commit the crime of subornation of perjury. Upon conviction he would be guilty of a felony, and would be disbarred. (See Penal Law, §§ 2, 31, 261, 1632, 1633; Id. § 2183, as amd. by Laws of 1926, chap. 469; Judiciary Law, § 477; Id. § 88, subd. 3.)

The statute above referred to as section 274 of the Penal Law has been in existence for over a century (Laws of 1818, chap. 259). It is interesting to note that in the petition presented to this court by the Brooklyn and Queens Counties Bar Associations, upon the basis of which this court directed an investigation, section 274 of the Penal Law is not mentioned. The petition is similar to one before the Appellate Division of the First Department. Attention has not been called to any criminal prosecution under the statute. The Canons of Ethics above mentioned have been recognized by the Supreme Court. (*Matter of Schwarz*, 175 App. Div. 335.) "Ambulance chasing" with its evils has been a matter of common knowledge for many years. The laymen, who were a part of it, were instrumental in stirring up litigation upon claims without merit, in falsely enlarging the amount of damages and in committing subornation of perjury. They procured retainers when the injured person was unable to appreciate his rights. They engaged in an undignified scramble to procure retainers. Often there was a contest of wits with the representative of proposed defendants to determine whether there was to be a retainer or a settlement of the case. All in all, it became a low order of business, intolerable in the practice of a noble profession. Attorneys who associated with such men must have been dull, indeed, not to understand what was going on, even if they did not actively participate. The practice finds no justification in the fact that poor persons might be deprived of their rights because of overreaching representatives of persons about to be sued. As a result of these methods, court calendars became congested; dishonest claims stood in the way of the disposition of honest liti-

gation; within a noble and learned profession there developed an unwholesome business; relentless search for material gain had displaced love of duty; interest of client was subordinated to self-interest; sordid gain, instead of duty to State and client, motivated interest and activity. These methods have been severely condemned by the courts. (*Matter of Clark*, 184 N. Y. 222 [1906], affg. 108 App. Div. 150; *Matter of Shay*, 133 id. 547 [1909]; *Matter of Newman*, 172 id. 173 [1916]; *Matter of Newell*, 174 id. 94 [1916]; *Matter of Levine*, 210 id. 8 [1924].)

Despite these clear and concise admonitions, " the business of ambulance chasing " continued. The increase in the use of the automobile made it more attractive in its material returns. Because of this allurement, attorneys engaged in the " business " were encouraged to continue, and some newly admitted to the bar were enticed by it, although all knew it was illegal and unethical and had been decried by the courts. It was not until a compelling demand that drastic steps be taken to disclose the real state of affairs and to clean the house of the bar that the nefarious business was stayed.

Respondent has knowingly violated the law which he swore to uphold. He has ignored the Canons of Ethics which it was his duty to observe. The conduct of the respondent in attempting to thwart the purposes of the investigation being conducted under the direction of this court emphasizes the iniquities that have crept into " ambulance chasing." The willingness of the respondent to attempt to prevent the truth being known plainly indicates that it is likely that he would urge his representatives to bend any effort, regardless of effect, to obtain the result desired — a verdict which would enrich him but impoverish the cause of justice. His methods and his conduct lay bare the potentialities for wrongdoing in connection with " ambulance chasing." There is nothing presented in this case which calls for considerations of leniency. Respondent has shown himself unfit to occupy the high office of attorney and counselor at law of the State of New York, the obligations of which he has betrayed. There is nothing in the record which extenuates his conduct.

The motion to confirm the report of the official referee should be granted, the respondent disbarred, and his name ordered stricken from the roll of attorneys. (See Judiciary Law, § 88, subd. 2, as amd. by Laws of 1913, chap. 720.)

Present — LAZANSKY, P. J., YOUNG, KAPPER, HAGARTY and CARSWELL, JJ.

Motion to confirm report of official referee granted, respondent disbarred and his name ordered stricken from the roll of attorneys.