STATE. EX REL. WILLIAM H. WRIGHT, ATTORNEY GENERAL, PLAINTIFF, V. GEORGE E. HINCKLE, DEFENDANT.

291 N. W. 68

FILED MARCH 22, 1940. No. 30016.

*Walter R. Johnson, Attorney General,* and *Rush C. Clarke,* for plaintiff.

*George E. Hinckle, pro se.*

Heard before ROSE, EBERLY, PAINE, CARTER and MESSMORE, JJ.

MESSMORE, J.

On September 21, 1936, application for leave to file information, affidavit and motion for citation for contempt of court was filed in the supreme court of Nebraska by William H. Wright, then attorney general, against the defendant, George E. Hinckle, and others. On the same day leave was granted by the court to file the aforesaid instruments and the same were filed. The prayer of the information was that this court make and enter an order, directing the defendants to appear before this court and make answer, if any there be, on the 26th day of October, 1936, and show cause by such answer why defendants should not be punished for contempt of court for the commission of the offenses set forth in the information. The record does not contain an answer by defendants.

On February 24, 1940, the state of Nebraska filed a motion in this court, supported by an affidavit, praying the court that an attachment or warrant be issued for the apprehension and arrest of defendant George E. Hinckle, and that he be brought before the court, at a time to be fixed by the court, to show cause, if any there be, why he should not be punished for contempt, as prayed in said original infor-

mation. February 24, 1940, the court ordered the arrest of defendant George E. Hinckle, and that he be brought before the court, to be dealt with according to law. In furtherance of this procedure, the court made a finding that there was danger that defendant Hinckle would depart the jurisdiction of the court before the expiration of the time fixed by the court when he may appear and show cause why he should not be punished for contempt, as prayed in the original information; ordered the arrest of the defendant; fixed the amount of his bail in the sum of $1,000; ordered that in default thereof said defendant be committed to the county jail of Lancaster county; and directed the defendant to appear before this court and make answer, if any there be, on the 11th day of March, 1940, at 9 o'clock a. m., and then and there show cause, if any there be, why he should not be punished for contempt of this court for the commission of the offenses, and every one thereof, set forth in the original information.

On March 12, 1940, at 9 o'clock a. m., the supreme court convened in regular session for the purpose of the further hearing of this cause. Rush C. Clarke, assistant attorney general, appeared for and in behalf of the state; defendant Hinckle did not appear by an attorney, did not file a written answer in this cause and was found to be in default of answer, but was personally present. After being first duly sworn, he voluntarily made a statement to the court, which was reduced to writing, and became a part of the record in this case.

This is an original action for contempt for the illegal practice of law by the defendant, George E. Hinckle, and others. The case proceeded as against defendant Hinckle.

We believe that it would unnecessarily lengthen this opinion to set forth each of the 17 charges separately, and we are content with the statement that each charge is in detail, specific and conclusive as to constitute an offense as claimed. The substance of the charge and charges is that this defendant wilfully, knowingly, contumaciously, unlawfully and intentionally engaged in the practice of law

without a license so to do, and pretended to practice law as such attorney, in violation of chapter 7, Compiled Statutes of Nebraska for 1929, section 7-101 of which reads in part: "No person shall be admitted to practice as an attorney or counselor at law, or commence, conduct, or defend any action or proceeding to which he is not a party, either by using or subscribing his own name, or the name of any other person, or by drawing pleadings, or other papers to be signed and filed by a party, in any court of record of this state, unless he has been previously admitted to the bar by order of the supreme court of this state;" that this defendant engaged in "ambulance chasing," in direct contempt of this court, and did engage in the practice of stirring up strife and litigation, without respect for and in direct contempt of the power, dignity and authority of this court to regulate the conduct and practice of law in this state, and the due administration of justice therein, and of all other lawfully created courts of this state.

Defendant Hinckle admits the truth of the original information and the separate counts stated therein by failing to answer and deny the same, after having received due and proper notice.

This court, in *Nebraska Children's Home Society v. State*, 57 Neb. 765, 78 N. W. 267, held: "Where a contempt proceeding is instituted by information and a rule to show cause, it is the duty of the defendant to file an answer if he desires to traverse the facts charged. Failing on sufficient opportunity to so do, the court may treat the facts alleged in the information as confessed."

In defendant Hinckle's voluntary statement to the court, he admitted that for a long period of time he had been engaged in "ambulance chasing," and offered in mitigation thereof the fact that he was required to earn a livelihood and was ignorant of the seriousness of the offense, but he stated that he thought the practice was wrong, and he detailed some of his experiences which are not pertinent to this particular case.

" 'Ambulance chasing' is generally used to designate the

activities of those laymen who acquaint themselves with the occurrence of accidents and approach the injured persons or their representatives with a view toward soliciting employment for an attorney at law in the conduct of litigation arising from the accident." Annotation, 73 A. L. R. 401.

In the case of *Matter of Rothbard*, 225 App. Div. 266, 232 N. Y. Supp. 582, it was said: " 'Ambulance chasing' with its evils has been a matter of common knowledge for many years. The laymen, who were a part of it, were instrumental in stirring up litigation upon claims without merit, in falsely enlarging the amount of damages and in committing subornation of perjury. They procured retainers when the injured person was unable to appreciate his rights. * * * All in all, it became a low order of business, intolerable in the practice of a noble profession. Attorneys who associated with such men have been dull, indeed, not to understand what was going on, even if they did not actively participate. * * * As a result of these methods, * * * there developed an unwholesome business; relentless search for material gain had displaced love of duty; interest of client was subordinated to self-interest; sordid gain, instead of duty to state and client, motivated interest and activity." All of the things mentioned under this definition of "ambulance chasing" are included in the original information to which the defendant did not answer.

In *State v. Barlow*, 131 Neb. 294, 268 N. W. 95, this court held: "The supreme court is vested with the sole power to admit persons to the practice of law in this state and to fix the qualifications for admission to the bar" (Const. art. II, sec. 1; art. V, secs. 1, 25), and "possesses the inherent power to punish for contempt any person assuming to practice law within the state without having been duly licensed so to do." See, also, *State v. Daugherty*, 136 Neb. 490, 286 N. W. 783.

The practice of law is not confined to performing services in a proceeding, but also includes preparation of legal instruments. 7 C. J. S. 703. "In a larger sense, it includes legal advice and counsel, and the preparation of legal in-

struments and contracts by which legal rights are secured, although such matter may or may not be pending in a court. To 'practice law' is to carry on the business of an attorney at law; to do or practice that which an attorney or counselor at law is authorized to do and practice; to exercise the calling or profession of the law, usually for the purpose of gaining a livelihood, * * * to make it one's business to act for * * * others in legal formalities, negotiations or proceedings." 7 C. J. S. 703.

"One who confers with clients, advises them as to their legal rights, and then takes the business to an attorney and arranges with him to look after it in court is engaged in the practice of law." *State v. Perkins*, 138 Kan. 899, 908, 28 Pac. (2d) 765. See, also, *Depew v. Wichita Association of Credit Men*, 142 Kan. 403, 49 Pac. (2d) 1041.

"The practice of law in which laymen may not engage is not limited to practice in court proceedings, but comprehends all the activities of a lawyer in advising and assisting others in all matters of law, both in and out of court." *Rhode Island Bar Ass'n v. Automobile Service Ass'n*, 100 A. L. R. 226 (55 R. I. 122, 179 Atl. 139).

An all-embracing definition of the term "practice of law" would involve great difficulty. In the instant case, the practice of law would include consultation with persons receiving injury and damage by virtue of an automobile accident, apprising them of their rights and of the legal liability of other parties; advising them in procuring the services of certain counsel; arranging for taking a contract for a retainer, fixing the amount thereof, and advising such persons as to the cost to them in bringing and instituting the action, and also as to the amount of recovery. Mere nomenclature is unimportant.

"Where the application of legal knowledge and technique is required, the activity constitutes such practice * * * it is the character of the act and not the place where it is performed which is the decisive factor." *Shortz v. Farrell*, 327 Pa. St. 81, 193 Atl. 20.

*In re Ripley*, 109 Vt. 83, 191 Atl. 918, the court, in quoting

from *People v. People's Stock Yards State Bank*, 344 Ill. 462, 176 N. E. 901, said: "Practicing as an attorney or counselor at law, according to the laws and customs of our courts, is the giving of advice or rendition of any sort of service by any person, firm or corporation when the giving of such advice or rendition of such service requires the use of any degree of legal knowledge or skill."

The case at bar is the outgrowth of and is connected with previous cases involving attorneys for whom the defendant acted, and by whom he was employed. This court, in the exercise of its powers, disciplined such attorneys and, in passing judgment, treated the matter as an admonition to those engaged in such unethical practices and imposed a nominal punishment. We think this defendant is entitled to the same consideration.

We conclude that the defendant was guilty of the illegal practice of law, within the contemplation of section 7-101, Comp. St. 1929, and in view of the authorities herein cited. We further conclude that the defendant is guilty of a wilful attempt to obstruct and hinder the due administration of justice in proceedings had or proceedings pending before the courts of this state, in violation of section 20-2121, Comp. St. 1929.

The duly licensed, qualified, experienced practitioner, possessing high moral character and integrity, honestly abiding by the canon of ethics of a noble profession, and the public requiring their services are entitled, at the hands of the court, to a judgment that such nefarious practices, carried on by the defendant in this case, be stamped out and ended.

For the reasons given, and in consideration of all of the facts, the defendant, George E. Hinckle, is adjudged to be guilty of contempt of court and sentenced to the county jail of Lancaster county, Nebraska, for a period of 30 days; and time served in said jail since the date of arrest shall be made a part hereof and included in this sentence. The punishment imposed in the instant case is not to be considered as commensurate with the gravity of the offense in future cases of like character.

JUDGMENT ACCORDINGLY.