### TUTTLE v. CLAFLIN et al.

(Circuit Court, S. D. New York. March 29, 1898.)

1. ATTORNEY AND CLIENT—LIEN FOR COMPENSATION—AUTHORITY TO RETAIN.
   Where an assignee for benefit of creditors, who was engaged in prosecuting a suit for infringement of a patent belonging to the estate, contracted with a third person, who was suing the same party for infringement on another patent, to unite their interests for their mutual benefit, and authorized such third person to carry on or settle the litigation at his own expense and divide the net amount recovered equally between them, *held*, that the latter had authority to employ a solicitor and counsel who should be entitled to a lien for their fees on the fund recovered by their efforts.

2. SAME—SOLICITOR AND COUNSEL.
   Whether a claim for counsel fees is made directly or indirectly through the solicitor is immaterial, since a fund recovered by their efforts is subject to the payment of the fair and reasonable value of their services, before it can be turned over to the parties entitled.

3. SAME—AMOUNT OF FEE.
   $13,285 *held* to be a reasonable fee for counsel who expended portions of their time for 322 days, aggregating at least 163 full days' labor, in the prosecution of a patent infringement suit.

4. SAME—LIEN—ENFORCEMENT.
   Services of counsel in an equity suit, resulting in a money decree in favor of a trust estate, are secured by a lien on the decree, and will be enforced by the court which rendered it, and which is familiar with all the facts showing the value of the services.

This was a proceeding in the above-entitled cause to enforce a lien for fees, in favor of the solicitor and counsel for complainant, on the fund recovered by their services. See 19 Fed. 599; 62 Fed. 453; 13 C. C. A. 281, 66 Fed. 7; 22 C. C. A. 138, 76 Fed. 227; 27 C. C. A. 255, 82 Fed. 744. The cause is heard on motion to confirm the master's report. The master found and reported as follows:

The action was brought for infringement of certain letters patent, and for the recovery of profits realized by the defendants from such infringement. It proceeded to final hearing, and resulted in a decree in favor of the complainant, entered on April 3, 1884, whereby it was referred to a master, to take and state the usual account of profits and damages. Proceedings upon this accounting were begun on April 10, 1884, and remained in progress until the filing of the master's report on August 26, 1893. As a result of this accounting, and after a long and vigorously contested litigation, there was finally paid into court, to the credit of this cause, the fund upon which a lien is claimed by the petitioners, amounting to $43,513.76, with interest thereon at the rate of 1½ per cent. per annum from April 19, 1897, the date of the deposit. The complainant's original solicitor was one Charles B. Stoughton. The claimant Milliken was substituted as solicitor of record on the 10th of April, 1884, and the petitioner Benjamin F. Lee was retained as counsel in or about the month of March, 1890, while the proceedings before the master were in progress. Each of the gentlemen named remained connected with the case until its termination. The claim of Mr. Milliken is $3,500, and that of Mr. Lee, as originally presented in a bill rendered by him to the complainant and his solicitor at the close of the case, is $12,350, less credits of $1,850, or $10,500. Objections are made to these claims—First, on the ground that the charges for services are excessive in amount; and, second, that the claims have no priority or lien upon the fund. The last-named objection will be first considered. The facts pertinent thereto are as follows:

The patent involved in this suit was owned by the Elm City Company, a corporation organized under the laws of the state of Connecticut. On March 9, 1876, said corporation, being insolvent, made a voluntary assignment for

the benefit of its creditors to Theodore A. Tuttle, of the city of New Haven, by virtue of which said patent passed to the assignee, together with the other assets of the corporation. Two years later, on August 1, 1878, this action was commenced. On June 16, 1883, the complainant, Tuttle, and one Charles B. Stoughton, who was then his solicitor, entered into an agreement with one George H. Wooster as follows:

"Whereas, letters patent of the United States were granted to Crosby and Kellogg, and by them assigned to the Elm City Co., dated the 2d day of December, 1862 (No. 37,033), and the same are now owned and controlled by Theodore A. Tuttle, trustee of the Elm City Co., and Charles B. Stoughton, attorney. etc.; and whereas, certain other letters patent were granted to Jno. A. Pipo on the 29th day of January. 1863, and were reissued on the 29th day of July, 1875, to George H. Wooster (number 6,565), and are now owned by the said Wooster; and whereas, suits have been brought against H. B. Claflin & Co., of the city of New York, under each of said patents, for infringement of the same; and whereas, the said Tuttle and the said Wooster consider that it is for the mutual benefit of each other to unite their interests in the prosecution of the said suits, and in the settlement of the same: Now, therefore, it is agreed by and between the said Tuttle and the said Wooster that they will each, at his own expense, push said suits to a final termination, and that the gross proceeds obtained by, from, or under said suits shall be paid over to said Wooster. and shall by him be equally divided; that is to say, one-half to the said Tuttle, trustee, and one half to the said Wooster. It is further agreed by the said Tuttle that the before-mentioned Geo. H. Wooster shall be, and is hereby, empowered to proceed with both of the said suits, if he shall at any time elect so to do, at his (Wooster's) own expense, and that the said Wooster shall alone be empowered to settle said suits, or either of them, and that neither of said suits shall be settled by any one else; and said Tuttle, or his attorney, C. B. Stoughton, shall approve, in writing, the terms of any settlement, in either case, before the same is concluded. In witness whereof, the parties hereto have hereunto set their hands and seals this 16th day of June, A. D. 1883.          Elm City Company.

"Theo. A. Tuttle, Trustee. [L. S.]
"Chas. B. Stoughton. [L. S.]
"George H. Wooster. [L. S.]

"Witness: Louis Jackson."

On February 28, 1888, two further agreements were made between Tuttle and Wooster, as follows:

"Memorandum of agreement made and entered into this twenty-seventh day of February, one thousand eight hundred and eighty-eight, by and between Theodore A. Tuttle, individually and as trustee of Elm City Company, and George H. Wooster: Whereas, on or about the 16th day of June, 1883, the said Theodore A. Tuttle, as trustee, and Charles B. Stoughton and George H. Wooster made and executed an agreement of that date, a copy of which is hereunto annexed, and said agreement, among other things, provided that said George H. Wooster shall 'alone be empowered to settle said suits [referring to the suits in said agreement described], or either of them, and that neither of said suits shall be settled by any one else, and said Tuttle, or his attorney, C. B. Stoughton, shall approve, in writing, the terms of any settlement, in either case, before the same is concluded'; and whereas, such provision of said agreement is not sufficiently definite and certain, and is liable to be misunderstood: Now, this indenture witnesseth that it is intended by said agreement aforesaid to provide, and it is hereby agreed that the same does provide, as follows: The said George H. Wooster shall have the sole and exclusive right and power, and he hereby is empowered, solely and exclusively, without any right of any person whatever, or of the said Theodore A. Tuttle, individually or as trustee of the Elm City Company, or of the said C. B. Stoughton, in any way to interfere with said settlement, to settle, adjust, and continue or discontinue said suits. or any of them, upon such terms and conditions as to him, the said George H. Wooster, may seem proper and just. And the said Tuttle hereby promises and agrees that he, or the said C. B. Stoughton, his attorney, shall execute such papers and instruments as

shall be necessary to make such settlement as may be required by him, the said George H. Wooster, or as may be required to ratify and approve of such settlement. And the said Theodore A. Tuttle, as such trustee as aforesaid and individually, does hereby make, constitute, and appoint him, the said George H. Wooster, of the city, county, and state of New York, his true, sufficient, and lawful attorney, for him, and in his name, as such trustee or otherwise, to settle, compromise, prosecute, or discontinue said suits, or either of them, and to do and perform all necessary acts in and about the same, and to execute all necessary conveyances and instruments in writing, and to employ proper attorneys and counselors at law to represent the complainant in said suit, or either of them, with full power to do everything whatsoever requisite and necesary to be done in the premises as fully as he, the said Theodore A. Tuttle, could do if personally present; the said Theodore A. Tuttle hereby ratifying and confirming all that his said attorney, the said George H. Wooster, shall lawfully do, or cause to be done, by virtue hereof. In witness whereof, the parties hereto have hereunto set their hands and seals the day and year first above written.

"[Signed]

Theo. A. Tuttle,
"Trustee Elm City Company. [Seal.]
"Theo. A. Tuttle. [Seal.]
"George H. Wooster. [Seal.]

"In presence of W. T. B. Milliken."

"Memorandum of agreement made this twenty-seventh day of February, one thousand eight hundred and eighty-eight, by and between Theodore A. Tuttle, individually and as trustee, &c., of Elm City Company, of New Haven, Connecticut, and George H. Wooster, of the city, county, and state of New York: Whereas, the said parties and Charles B. Stoughton, by a certain agreement, dated the 16th day of June, 1883, agreed, among other things, that said George H. Wooster should, at his own option, prosecute certain actions therein mentioned at his own expense, and since the making of said agreement said Wooster has elected to prosecute said actions, or one of them, and has commenced and carried on said actions, and the prosecution thereof: Now, this agreement witnesseth, that the said George H. Woo er hereby promises and agrees to and with the said Tuttle to indemnify and hold him harmless of and from all costs and expenses arising or growing out of the prosecution of said actions: provided his sole and exclusive control thereof is not in any wise interfered with by the said Tuttle, or with his consent or authority; it being understood that said Wooster is to be reimbursed for such expenditures as he may make, or for which he may be or become liable under the terms of this agreement, for the said prosecutions, out of the proceeds of said actions, and to be deducted therefrom before the division thereof as provided in said agreement of June 16th, 1883.

"George H. Wooster.
"Theodore A. Tuttle,
"Trustee Elm City Company."

The circumstances leading to the execution of these agreements are stated in an affidavit made by the complainant, Tuttle, during the progress of the suit, as follows:

"* * * On November 15, 1878, an interlocutory injunction was granted by Judge Blatchford against the defendants. It was supposed at that time that this litigation would be attended by but trifling expense or delay. The patent was of undoubted validity, and the court had adjudged it to be infringed. C. B. Stoughton made claims for legal services in connection with this patent, No. 37,033; and he claimed a lien upon any funds that might arise from the settlement of this suit, or from any recovery had therein; and I had a verbal understanding or arrangement with him that when H. B. Claflin & Co. settled this suit, which we thought they inevitably would within a short time, I would pay him his compensation out of the amount paid to me by them. We were disappointed in our expectation that H. B. Claflin & Co. would settle, and thereupon it became necessary to make some provision for the prosecution of the cause. I had no money to advance for the purpose of carrying on the suit. Mr. Stoughton was a competent lawyer,

skilled in the law of patents. The Pipo reissue, on which Mr. Wooster had also sued the defendants, was sustained on final hearing by Judge Blatchford, in Wooster v. Blake, on April 27, 1881, as I am informed will appear by reference to 8 Fed. 429. Negotiations were opened with Mr. Wooster on the basis of having Mr. Wooster advance from time to time the requisite disbursements to carry on the suit, and to have Mr. Stoughton furnish his legal services, relying for his compensation upon his lien upon the proceeds of any settlement or final judgment or decree. This arrangement was consummated and embodied in the agreement on page 99 of the record, dated June 16, 1883. Before this case had progressed very far, Mr. Stoughton fell into great pecuniary and other difficulties; and he left New York, and disappeared from view altogether."

Mr. Lee was retained personally by Mr. Wooster in 1890, as before stated; and, so far as the record discloses, he had no personal transactions with Mr. Tuttle, of any importance, at all events, until several years later. Payments were made to him by Mr. Wooster on account of his services and disbursements. Mr. Wooster had also paid, and continued to pay, other expenses incidental to the suit; his disbursements altogether amounting, as it was claimed by him, to about $5,500. It does not appear that any of the expenses were paid by Mr. Tuttle. Mr. Milliken, also, was personally retained by Mr. Wooster. He testified that shortly after such retainer he had an interview with the complainant, in New Haven, and was informed that he had no funds, and that there were no collectible assets in his hands, and that the solicitor would be obliged to look alone to the funds which might be recovered in the action for his compensation; adding that his (Tuttle's) arrangement with Mr. Wooster would provide for the necessary disbursements in the prosecution of the action. It does not appear that Mr. Milliken ever formally retained Mr. Lee as his counsel, but he fully recognized the latter's employment by Mr. Wooster; and Mr. Lee was in frequent consultation with him from the beginning of his connection with the case, and the relations between them were of the sort ordinarily existing between the solicitor of record and counsel. Mr. Lee became aware as early as December, 1894, of the existence of the contracts of June 16, and the first of the contracts dated February 28, 1888. The third agreement was not brought to his notice until some time in 1897, after practically all the services rendered by him had been performed. Neither Mr. Tuttle, the complainant, nor Mr. Wooster, who employed the solicitor and counsel, has raised any question as to the reasonableness of the claims made by Messrs. Lee and Milliken, nor as to the propriety of constituting their charges a primary lien upon the fund. Such objections as have been presented to me are urged mainly on behalf of the Union Trust Company and others, creditors of the insolvent corporation of which complainant was trustee. They claim that the contracts made with Wooster were improvident, and that, since their interests have been neglected by the trustee, they have a right to appear for their own protection. The grounds of their objections, briefly stated, are these: It is claimed, first, that Mr. Tuttle, as trustee of an insolvent estate, had no power to create any lien thereon: that petitioners contracted with him, or his agent, Wooster (who could have no greater powers than his principal), with full knowledge of the trust relation, and must have contemplated the fact that their fees, so far as they were to come out of the trust estate, were subject to the approval of the probate court of New Haven, upon a settlement of the trustee's accounts. It is admitted that Tuttle, as trustee, would be entitled, on such settlement, to a reasonable allowance for solicitors' and counsel fees; but it is claimed that no allowance, either to the trustee or his solicitors, can be made in this court, unless by virtue of a specific lien, the existence of which is denied. It is claimed, moreover, that the trustee's contracts with Wooster are unauthorized, as he had no power to delegate to Wooster any authority to bind the trust fund, and that the petitioner's rights are founded solely on the agreement of Wooster to pay, or become personally liable for, the whole expense of the litigation.

In view of the state of affairs shown to have existed under the contracts above recited, these objections seem to me without force. I consider that the authority of Mr. Wooster to employ counsel, and subject the fund to a claim in their favor, had a substantial foundation, in his own direct, personal

interest in the subject-matter of the litigation, derived from the contract of June 16, 1883, and the subsequent acts of the parties thereunder. It did not depend solely upon such powers as were conferred upon him by the later contracts of 1888 to act as the agent or attorney of Tuttle. The contract of June 16, 1883, recites that suits were pending against H. B. Claflin under each of the patents owned by the respective parties, and that they considered it "for the mutual benefit of each other to unite their interests in the prosecution of the said suits, and in the settlement of the same." It was agreed that the gross proceeds obtained from the suits should be paid over to Wooster, and by him divided equally between Tuttle, as trustee, and himself. The prosecution of the suit on the Pipo patent, in which Wooster was complainant, was subsequently abandoned, and the parties thereafter confined their attention to the suit brought in the name of Tuttle. This appears by the affidavit of Tuttle, above quoted from; and the fact is also referred to in the second of the agreements made on February 27, 1888, which recites that since the making of the contract of June 16, 1883, "said Wooster has elected to prosecute said actions, or one of them, and has commenced and carried on said actions." It thus appears that Tuttle and Wooster entered into a virtual pooling arrangement, as regards these two suits, by the terms of which either or both of them, as might be deemed best, should be prosecuted for their joint benefit. Whether both were prosecuted made no practical difference in the rights of the parties. Each party had a half interest in the recovery, through whatever channel it came. They had agreed, as the contract said, "to unite their interests," and to divide the proceeds. Although each, in the first instance, agreed to pay his own expenses, as matter of fact Wooster provided all the necessary funds to carry on the litigation. The suit, therefore, although prosecuted in the name of Tuttle, was in fact prosecuted by Wooster, and was for his own benefit, as well as for that of Tuttle and any others who might be interested. He was an equitable assignee of a portion of whatever sum might ultimately be recovered. Fairbanks v. Sargent, 117 N. Y. 320, 328, 22 N. E. 1039. Although the fact did not appear upon the record, his position was analogous to that of one of a class, as of bondholders, creditors, and the like, who prosecutes a suit on behalf of himself and all others similarly interested.

It is urged by counsel for the objecting creditors that these contracts were "beyond the power of the trustee to make, and conveyed no power against the trustee, or his cestuis que trustent," and are "unauthorized, unlawful, and improvident to the last degree." These criticisms were directed chiefly to those provisions giving Wooster entire control of the litigation, authorizing him to employ counsel, and vesting him with sole discretion as to the settlement of the case. I do not understand that it is claimed that it was beyond the power of the trustee to agree, as was provided by the contract of June 16, 1883, that the parties should unite their interests in the prosecution of their respective suits, and that each one should have a half interest in the claim being prosecuted by the other. However this may be, I am satisfied that such an objection, if relied upon, is not available in this proceeding. Whether or not the agreement was in this respect valid in its inception, the parties proceeded to act upon it, and Mr. Wooster expended a substantial sum on the faith of it. As between him and the trustee, the latter would be estopped from questioning the existence of Wooster's vested rights in the litigation, and this estoppel extends to those claiming under him. The very fact that they now appear in court, claiming a right to the proceeds of the litigation prosecuted by Wooster, involves a recognition of his right to prosecute. Mr. Wooster, then, in obtaining the fund now in court, is to be regarded as having acted on behalf of himself and all others in like situation having an interest in the subject-matter. It is well settled that in cases of this sort the person who secured the fund for the common benefit is entitled to be reimbursed his legal expenses from the fund; and the amount of such expenses may constitute a lien upon the fund, and should be deducted therefrom before any distribution is made among the parties entitled to receive it. Gregory v. Pike, 15 C. C. A. 33, 38, 67 Fed. 837; Central R. & B. Co. v. Pettus, 113 U. S. 116, 123, 5 Sup. Ct. 387; Trustees v. Greenough, 105 U. S. 527.

The objection that the question of counsel fees can properly be determined

only by the court in Connecticut is not well taken. It must be remembered that the claim of the petitioners is not against the entire assets of the trust estate in the hands of Tuttle. It is sought here merely to make the specific fund now in this jurisdiction bear the expense by which it was procured. There is no doubt of the power of a court of equity, where a fund is within its control, to protect the rights of all persons properly having claims upon it, before permitting the fund to be taken from its jurisdiction. When, as in this case, the claim is in respect of counsel fees, it would certainly be most appropriately passed upon in the court where the action was tried, and the members of which have had the details of the litigation under their personal observation.

For reasons already stated, there is no force in the further objection urged on behalf of the objecting creditors, that whatever is paid to the petitioners should be paid them by Mr. Tuttle, as trustee, after the amount thereof has been allowed to him as an expense or disbursement. For the purposes of the present proceeding, Mr. Wooster is to be regarded as occupying the position of a quasi trustee; representing, as he does, not only himself, but Mr. Tuttle, and any others who may have interests in the fund. It is well settled, and, I believe, is not disputed here, that, where an allowance may properly be made to a trustee for counsel fees, such allowance may appropriately be made to the solicitors themselves.

It has been suggested, further, that no lien can be allowed in favor of the petitioners, Messrs. Lee, for the reason that they are not solicitors of record, and that no lien can be recognized in favor of counsel. While this is true in a limited sense, the objection, on the facts of the present case, is one of form, rather than of substance. The claim of Messrs. Lee & Lee is not disputed by Mr. Wooster, by whom they were employed, nor is it questioned by the solicitor of record. On the contrary, he unites with them in this proceeding. It is accordingly immaterial whether an allowance is made directly to them, or whether an allowance is made to Mr. Milliken for a gross amount, and the amount of Messrs. Lee & Lee's charges declared to be a lien on this allowance.

It next remains to consider the amount to be awarded to the petitioners. Evidence was offered by Messrs. Lee & Lee to show that the services rendered by them were worth, upon a quantum meruit, the sum of $13,285. Although it was stated on their behalf in the first instance that they would abide by the bill originally rendered by them, for the sum of $12,350, this concession was afterwards withdrawn, in consequence of the introduction in evidence by the counsel for the complainant of a certain contract made between Mr. B. F. Lee and Mr. Wooster, under date of December 29, 1894. After this contract was produced, the petitioners gave notice that they should waive no rights in the premises, and should ask for an award for the full amount to which they were entitled, whether under a contract, quantum meruit, or otherwise. The contract was entered into some time after a decision had been made by Judge Coxe, setting aside the report of the master in favor of the complainant. 62 Fed. 453. After reciting the entry of a final decree on this decision, and the fact that Mr. Wooster was dissatisfied with the results of the suit, and at his instance an appeal had been taken from the final decree, it provided that the party of the second part (Mr. B. F. Lee) "hereby agrees to act as counsel for the appellant in the prosecution of said appeal, and to use all reasonable and proper efforts to secure a reversal of said final decree." It is claimed by the petitioners that, under the terms of this contract, there is due them for services, properly to be considered as within the scope of the above-quoted provision, the sum of $7,640, computed according to the percentage named in the agreement. In addition to this, they claim further compensation for services outside of the contract, amounting to $6,927; making an aggregate of $14,567, exclusive of any amounts heretofore received by them on account. The objecting creditors, on the other hand, claim that all the services rendered by the petitioners, aside from what was done in connection with an application for a writ of certiorari to the supreme court, were actually rendered under the contract, and, according to the percentage therein named, amount only to $7,143. Neither party to the controversy has claimed that the amount of the petitioners' compensation is to be controlled by the contract.

The petitioners did not elect to rely exclusively upon the contract, nor was any motion to compel them so to do made by the other side. Under these circumstances, as both parties concede that the value of at least a part of the services must be determined outside of the contract, I have thought it best to disregard that instrument altogether, and fix the counsel fees on the basis of a quantum meruit.

It is unnecessary to set forth the details of the various services as testified to before me, the court being fully familiar with the history of the litigation. The nature of the questions involved in its various stages will sufficiently appear on examination of the various reported decisions in the action, as follows: 62 Fed. 453; 13 C. C. A. 281, 66 Fed. 7; 22 C. C. A. 138, 76 Fed. 227; 77 O. G. 973; 78 O. G. 839; 166 U. S. 721, 17 Sup. Ct. 992.

The petitioners have testified with great detail as to the nature and extent of their work; and I have carefully gone over the record, and the various briefs and memoranda used by counsel in the case. The evidence shows that the litigation occupied the time of the Messrs. Lee, individually, for· substantial portions of three hundred and twenty-two (322) days, sufficient to aggregate at least one hundred and sixty-three (163) full days of labor. This is exclusive of services rendered by junior members of the bar employed in their office, and those of clerks and other assistants. These services have been apportioned between the various stages of the litigation, and itemized values placed upon them by the petitioners, which amount in the aggregate to $13,369. No evidence was offered by the objecting creditors, except that of the counsel for the defendants H. B. Claflin & Co. He testified, in substance, that from his knowledge of the time which he himself was compelled to employ in conducting the defense, and taking the highest rate that can reasonably be charged for work of the description here involved, the sum of $7,500 would be a proper compensation; admitting, however, upon cross-examination, that, if it should be proved to his satisfaction that more time had been required, his estimate would be larger. Several of the specific ·charges made by the petitioners in the apportionment of their services have been criticised by the objecting creditors, and it may perhaps be admitted that, standing alone, and considered in the abstract, certain of the amounts named may appear unreasonable or inconsistent. This fact, however, does not affect my opinion as to the value of the services taken as a whole. In cases of this kind, it is difficult to prepare any itemized statement which in one or the other of its features may not be open to question. In my judgment, the only fair way to arrive at the value of legal services in a protracted litigation of this character is to consider the matter as a whole; taking into account all the elements which it has been held are properly to be considered, as, for instance, the professional standing of counsel, the results achieved by him for his client, the importance of the questions involved, the amount of time actually spent, and the extent to which the labor incident to the case occupied the attention of his office at different periods. In this view, I am satisfied that the services rendered by the Messrs. Lee are fairly and reasonably worth the sum of $13,000. From this should be deducted payments already made, amounting to $1,850, leaving a balance due of $11,150, to which should be added $284.90 for disbursements, as to which no question has been raised. With regard to the claim of Mr. Milliken for $3,500, no evidence was offered by the contesting creditors, but it is claimed in the brief submitted on their behalf that the allowance should not exceed $2,500. Mr. Milliken appeared before me, and testified at some length regarding the character of the services rendered by him; and on this testimony, and in the absence of any evidence to the contrary, I am satisfied that he is reasonably entitled to the amount claimed. It appears that a claim is made on behalf of one Nelson A. Lewis to a portion of the fund; and it is stated on his behalf that he had his own counsel in readiness at all times to protect his interests, and that he never authorized the retainer, or continued employment, of the petitioners herein. Accordingly, it is urged that his interest in the fund cannot be subjected to any lien on behalf of counsel whom they had not recognized. This claim I do not regard as having a sufficient foundation, in view of my conclusion above expressed, that the action is to be regarded as having been conducted by Mr. Wooster on behalf of himself and all others interested

in the fund, and that such other parties are in duty bound, under the rules prevailing in the courts of equity, to contribute their proportionate share of the expenses incurred in creating the fund. Whatever may be the rights of Mr. Lewis, they are subject to the payment in the first instance of all proper charges against the fund. I accordingly find and report that the claim of William T. B. Milliken, Esq., should be, and is hereby, fixed and allowed at the sum of $3,500, and the claim of Messrs. Lee & Lee at the sum of $11,434.90 (these amounts to be exclusive of such sum, if any, as may be payable to them by way of costs or allowance upon this proceeding); that the claims thus allowed are liens upon all the moneys deposited in court to the credit of this suit, and are paramount to the claims of each and every party to this suit, and to all claims of all parties who have appeared in this proceeding; that, at the time of the retainer of the petitioner Benjamin F. Lee, the said Benjamin F. Lee and the petitioner William H. L. Lee were co-partners doing business as attorneys and counselors at law under the firm name and style of Lee & Lee, and that since then they have been, and now are, such co-partners; that in this suit the petitioner Benjamin F. Lee solely represented the complainant of record, as well as in court, in the United States circuit court of appeals for the Second circuit, and also in the supreme court of the United States.

William H. L. Lee and Howard Thayer Kingsbury, for petitioners.
Lee & Lee and W. T. B. Milliken, pro se.
W. W. Niles, for exceptant Lewis.
John K. Beach, for exceptants Union Trust Co. and others.

LACOMBE, Circuit Judge. For convenience of reference, the title of the action is retained, although it has long since determined. The master's report has so fully covered the matters referred to him that it seems unnecessary to go into any extended review. No one is contending, as the exceptants seem to think, that there is some lien in favor of solicitors and counsel against the "trust estate." Services rendered by them in a suit in equity, however, have ended in a judgment which has been paid; and upon that judgment and its fruits the solicitor has a lien for the fair and reasonable value of his services, including disbursements for counsel. Whether the claim of counsel is direct or indirectly through the solicitor is an immaterial detail. It is only the amount left after payment of the reasonable fees and disbursements of solicitor, including the fair and reasonable fees of counsel, which is available for complainant trustee or those having claims upon the trust estate. The fund being in this court, and the lien attached to it, this court will itself determine the amount of those charges. It is the appropriate tribunal to do so.

The suit which produced the fund was tried in this court. It is familiar, as no other court can be, with the exact measure of the work done. It knows the conditions under which professional work of this kind is performed in this city, and with the rate of compensation it commands. Under these circumstances, the proposition that the entire fund shall be transferred to the probate court of another state, whose information upon all these points must necessarily be second hand, and will presumably be scanty, and that solicitor and counsel be sent to a foreign jurisdiction to present their claims, is not calculated to commend itself to the court which holds the fund. In view of the extent and character of the work done, and the measure of success ultimately obtained, I do not find the master's allowances ex-

cessive,—a conclusion which I have reached not so much from the testimony taken before him as from a familiarity with the case, acquired by the extended examination of the record which was necessary to a final disposal of the appeal. The exceptions are overruled, and master's report confirmed. Master's fees fixed at $750 and disbursements.