**BROOKS v. MANDEL–WITTE CO., Inc., et al.**
**No. 111.**

Circuit Court of Appeals, Second Circuit.
Jan. 11, 1932.

L. HAND, Circuit Judge, dissenting.

Blackman, Pratt & King, of New York City (Addison S. Pratt, of New York City, of counsel), for appellant.

M. Robert Gadrich, of New York City, for respondents.

Before MANTON, L. HAND, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

Appellant, an attorney at law, admitted to practice in the state and federal courts, including the United States Customs Court, seeks to enforce a lien against a fund of money set aside to satisfy a claim for professional services. The question presented is whether appellant has an attorney's lien.

Stern, a Customs House broker, on January 17, 1925, contracted with appellee, who was engaged in importing artificial flowers and feathers at the port of New York, to represent it in obtaining a reduction and refund of excess customs duties on artificial flowers under the Tariff Act of 1922 (section 1 [19 USCA § 121]). The contract read in part as follows: "We authorize said S. Stern to make, file and prosecute protests and appeals in our name, to retain counsel, and to engage the assistance of our custom brokers or agents (but at their own expense), and generally to use all lawful means to secure the allowance of said refunds and abatements of excessive customs duties." It provided a payment of one-third of all amounts refunded as compensation for all services.

On May 22, 1926, after retaining appellant, a second contract was made, when other counsel than appellant were also retained, and it provided for a fee of 50 per cent. in which appellant had a third interest. Appellant was retained by Mr. Stern, and his retainer was fully ratified by appellees later. Refunds were eventually awarded to appellee, and appellant, not having been paid, asserts an attorney's lien. By agreement, the amount which appellant would receive if the lien is lawful was deposited in a trust company to await the determination of this controversy. Appellant's services consisted of filing and prosecuting protests against assessments, appearing before the United States Customs Court when the protests appeared on the calendar, prosecuting the protests in the court after a decision in a test case, and obtaining judgment orders thereon sustaining the protests, holding the merchandise dutiable at 60 per cent. instead of 90 per cent. Some items were reliquidated, at plaintiff's request, at 60 per cent. by the collector without prosecution of the protests before the court. Blumenthal & Co. v. United States, 14 Cust. App. 17.

In May, 1930, when payment for his services was refused, appellant filed with the collector a notice of lien as appellee's attorney, claiming under section 475 of the Judiciary Law of New York state (Consol.

Laws, c. 30). Whatever may be said of the sufficiency of this notice or its efficacy, it is sufficient to point out that, if the lien exists, it is statutory and notice thereof is not required to be given. Peri v. New York Central & H. R. R. Co., 152 N. Y. 521, 46 N. E. 849. The state court has held that an attorney's lien will not be allowed by virtue of section 475 of the Judiciary Law for services in the special tribunals established by the United States. Matter of Albrecht, 225 App. Div. 423, 233 N. Y. S. 383, affirmed 253 N. Y. 537, 171 N. E. 772. But there the court considered services performed before the Board of Tax Appeals, which is not a judicial tribunal. The United States Customs Court is a judicial tribunal. Act of May 28, 1926, chap. 411 (19 USCA §§ 405a, 405b). It is not an administrative body, commission, or board. For instance, the service of appellant before the collector in obtaining rebates is upon a different basis as to this asserted lien than the services in the United States Customs Court and the Court of Customs Appeals. The Board of Tax Appeals, by the act creating it, is declared to be a board and independent agency in the executive branch of the government. The Revenue Act of 1924, § 900 (k), 26 USCA § 1212 note. See, also, Revenue Acts of 1926 and 1928 (26 USCA §§ 1211, 2001 et seq.). It is not a court. Old Colony Trust Co. v. Com'r, 279 U. S. 716, 49 S. Ct. 499, 73 L. Ed. 918. A final order or decree of the Customs Court, sustaining or overruling a protest, is in the form of a declaratory judgment and a direction to the collector, as the Tariff Acts require, to reliquidate the entry accordingly. Section 515 of the Tariff Acts of 1922 and 1930 (19 USCA §§ 399, 1515). The United States Court of Customs Appeals has held the Customs Court to be a judicial tribunal, and a protest filed by an importer is the initial pleading in an action. U. S. v. Macy & Co., 13 Cust. App. 245; U. S. v. McCoy, 5 Cust. App. 264; Jordan Marsh Co. v. U. S., 57 Treas. Dec. 392, No. 43901.

Section 475 of the N. Y. Judiciary Law provides: "From the commencement of an action or special proceeding, or the service of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client's cause of action, claim or counterclaim, which attaches to a verdict, report, decision, judgment or final order in his client's favor, and the proceeds thereof in whosoever hands they may come; and the lien can not be affected by any settle-ment between the parties before or after judgment or final order."

The federal courts sitting in a state have enforced statutes of that state creating attorney's liens whether the suit for services in which the lien was claimed was originally brought in a state court or in a federal court. In re Baxter & Co., 154 F. 22 (C. C. A. 2); Macheinski v. Lehigh V. R. Co., 272 F. 920 (C. C. A. 2). The state courts have enforced liens claimed for services rendered in a suit brought in a federal court or removed from the state court to the District Court. Central R. R. & Bkg. Co. v. Pettus, 113 U. S. 116, 5 S. Ct. 387, 28 L. Ed. 915; In re Paschal, 10 Wall. (77 U. S.) 483, 19 L. Ed. 992; Spellman v. Bankers' Trust Co., 6 F.(2d) 799 (C. C. A. 2); Meighan v. Amer. Grass Twine Co., 154 F. 346 (C. C. A. 2); Matter of Chorosh v. Woodbury, 135 Misc. Rep. 910, 240 N. Y. S. 157; McKennell v. Payne, 197 App. Div. 340, 189 N. Y. S. 7. In Fischer-Hansen v. Brooklyn Heights R. Co., 173 N. Y. 492, 66 N. E. 395, 397, the court said: "The statute is remedial in character, and hence should be construed liberally in aid of the object sought by the legislature, which was to furnish security to attorneys by giving them a lien upon the subject of the action." The fund is now in the possession of, and under the control of, the appellee's attorney Mr. Keve. Large sums have been paid the appellees as refunds. These were paid in satisfaction of judgments. The lien attaches to the proceeds, under section 475, "in whosoever hands they may come." But a sufficient sum having been set aside and on deposit in a special account subject to the further order of the court, it is within the power of the court to enforce the appellant's lien thereon. It is said in the Matter of Levy, 249 N. Y. 168, 163 N. E. 244: "The lien, whether before or after judgment, is subject to the right of the client to settle in good faith. The attorney may, however, follow the proceeds to enforce his lien. The law does not permit the client to cheat his attorney." See Cunningham v. Sizer Steel Corp. (D. C.) 1 F.(2d) 653; Robinson v. Rogers, 237 N. Y. 467, 143 N. E. 647, 33 A. L. R. 1291; Beecher v. Peter A. Vogt Mfg. Co., 227 N. Y. 468, 125 N. E. 831.

But it is argued that section 3477 of the U. S. Revised Statutes, now section 203, title 31, U. S. Code (31 USCA § 203), forbids the creation of a lien. This section applies only to voluntary transfers or assign-

ments by a claimant of his claim against the United States, of whatever character it may be, whether the transfer be absolute or given as collateral security or for the purpose of bringing suit thereon, and whether the claim is to be prosecuted in the courts or in one of the executive departments of the government. Brothers v. United States, 250 U. S. 88, 39 S. Ct. 426, 63 L. Ed. 859; Prairie State Nat. Bank v. United States, 164 U. S. 227, 17 S. Ct. 142, 41 L. Ed. 412; St. Paul & Duluth R. Co. v. United States, 112 U. S. 733, 5 S. Ct. 366, 28 L. Ed. 861; United States v. Gillis, 95 U. S. 407, 24 L. Ed. 503. The purpose of the statute was to protect the government and not the parties to the transfer or assignment. Goodman v. Niblack, 102 U. S. 556, 26 L. Ed. 229; McGowan v. Parish, 237 U. S. 285, 35 S. Ct. 543, 59 L. Ed. 955; Price v. Forrest, 173 U. S. 410, 19 S. Ct. 434, 438, 43 L. Ed. 749. In Price v. Forrest, supra, the court said: "There was no purpose to aid those who had claims for money against the United States in disregarding the just demands of their creditors. We perceive nothing in the words or object of the statute that prevents any court of competent jurisdiction, as to subject-matter and parties, from making such orders as may be necessary or appropriate to prevent one who has a claim for money against the government from withdrawing the proceeds of such claim from the reach of his creditors; provided such orders do not interfere with the examination and allowance or rejection of such claim by the proper officers of the government, nor in any wise obstruct any action that such officers may legally take under the statutes relating to the allowance or payment of claims against the United States."

Nutt v. Knut, 200 U. S. 13, 26 S. Ct. 216, 217, 50 L. Ed. 348, considered an agreement for payment to an attorney for his services of "a sum equal to 33⅓ per cent. of the amount which may be allowed on said claim." The court said: "Such an agreement did not give the attorney any interest or share in the claim itself, nor any interest in the particular money paid over to the claimant by the government. It only established an agreed basis for any settlement that might be made, after the allowance and payment of the claim, as to the attorney's compensation. It simply created a legal obligation upon the part of the estate, which, if not recognized after the collection of the money, could have been enforced by suit for the benefit of the attorney, without doing

violence to the statute or to the public policy established by its provisions."

The appellant's lien was not created by an agreement with the appellee's agent Stern, but was created solely by the statute, section 475 of the N. Y. Judiciary Law, by operation of law. Section 3477 does not apply to cases of liens transferred by operation of law. Western Pac. R. Co. v. United States, 268 U. S. 271, 45 S. Ct. 503, 69 L. Ed. 951; Houston v. Ormes, 252 U. S. 469, 40 S. Ct. 369, 64 L. Ed. 667; McGowan v. Parish, 237 U. S. 285, 35 S. Ct. 543, 59 L. Ed. 955; Nat. Bank of Commerce v. Downie, 218 U. S. 345, 31 S. Ct. 89, 54 L. Ed. 1065, 20 Ann. Cas. 1116; Bailey v. United States, 109 U. S. 432, 3 S. Ct. 272, 27 L. Ed. 988; Goodman v. Niblack, 102 U. S. 556, 26 L. Ed. 229; Erwin v. United States, 97 U. S. 392, 24 L. Ed. 1065.

It is contended that the agreement between Stern and the appellant is illegal and void because section 270 of the state Penal Law (Consol. Laws, c. 40) makes it unlawful for a layman "to make it a business to solicit employment for a lawyer, or to furnish attorneys or counsel or an attorney and counsel to render legal services, * * * without having first been duly and regularly licensed and admitted to practice law in the courts of record of this state." The Customs Court permits Customs House brokers to practice and appear before it. The state statute could not prohibit this. Byrne v. Kansas City, etc., Ry. Co. (C. C.) 55 F. 44. Mr. Stern employed the solicitor Herzog to obtain customs brokerage business. It was after the employment that appellant was selected. Mr. Stern, as customs broker, performed useful services of a nonprofessional character. He kept himself and his clients posted, advising them as to questions of value, classifications, etc., and as to their rights and the best methods of procedure. He examined the entries and liquidations of the appellee; he saw that Mr. Brooks was properly notified so that the protests might be properly filed by him. He could and did act before the collector. The appellant testified that he represented others, independently of Stern, in their claims for refunds for artificial flowers, and that he had no arrangement to split his fees with Stern. In People v. Meola, 193 App. Div. 487, 184 N. Y. S. 353, 354, referring to this statute, the court said: "I think that the statute is within the police power of the state, as prohibitive of a business that naturally tends to

stir up litigation for litigation's sake only, declared to be a public evil in Matter of Clark, 184 N. Y. 222–233, 77 N. E. 1."

As pointed out by the New York Court of Appeals in People v. Title Guarantee & Trust Co., 227 N. Y. 366, 125 N. E. 666, 668, where the court considered section 280 of the Penal Law, making it unlawful for any corporation to hold itself out to the public as being entitled to practice law, or to render or furnish legal services or advice, "the best and controlling test by which to determine whether the given acts constituted practice of law or rendition of legal services is by the answer to be given to the underlying inquiry whether such acts were ones which had been committed to the exclusive charge of attorneys or were those which might be performed by a layman. * * * This is to be decided by the nature of the act, and not by the identity of the individual who most frequently performs it." The appellee in the instant case employed Stern to act as customs broker, performing such services as he therein could, and authorized him to employ counsel, which he did. It became counsel's duty to prosecute the protests by the proceedings in court, which service was one to be expected of an attorney at law, admitted to practice in the Customs Court. It was the rendition of legal services which was thought necessary to be confided to the care of an attorney, even though it may also have been performed by a customs broker. The preparation of protests and the prosecution thereof may be ancillary to the daily work of a customs broker or it may be involved in his business, but in this case it was decided to employ an attorney at law whose employment was confirmed by the appellee, and the services of the attorney involved the practice of law before a judicial tribunal. For these reasons, Stern did not make it a business to solicit employment for an attorney at law or to furnish attorneys to render legal services within the meaning of section 270 of the New York Penal Law. Moreover, by the contract as quoted above, it appears that Mr. Stern was attorney in fact, authorized to retain counsel for appellee. An attorney retained by an agent may recover from the principal for his services. Koscinski v. White (D. C.) 286 F. 211; Tuttle v. Claflin (C. C.) 86 F. 964, affirmed 88 F. 122, 124 (C. C. A. 2). ▪ The appellant has a lien for the services, and we think that lien may be impressed upon the fund which has been deposited by agreement of the parties.

Decree reversed.

L. HAND, Circuit Judge (dissenting).

The lien created by section 475 of the New York Judiciary Law dates from the commencement of a legal proceeding and is in favor only of the attorney at law who appears. The Customs Court may indeed be a court within the meaning of that section, and it sits within the state, but an attorney appearing in it need not be an attorney at law of New York or of any other state. Brooks was indeed an attorney at law of New York and he appeared, but the services which he rendered did not require an attorney at law. I doubt if an attorney at law gets a lien except for services as such; that he is secured merely because of his office. So far as the courts of New York have declared themselves at all, they seem to have taken this view. Flint v. Van Dusen, 26 Hun (N. Y.) 606; Tynan v. Mart, 53 Misc. Rep. 49, 103 N. Y. S. 1033; Duringshoff v. O. B. Coates & Co., 93 Misc. Rep. 485, 157 N. Y. S. 230. Flint v. Van Dusen was apparently recognized as good law in Re Regan, 167 N. Y. 338, 342, 60 N. E. 658, though not expressly upon this point.

But if I am wrong about that, and the services were those of an attorney at law, I cannot see how the plaintiff can escape the effect of section 270 of the New York Penal Law, which forbids any one to make a business of furnishing attorneys to render legal services. Stern certainly furnished the plaintiff as an attorney to render the services, whatever they were, and as he was in the habit of making such contracts he was in the business of doing so. People v. Meola, 193 App. Div. 487, 184 N. Y. S. 353. The plaintiff sues only under Stern's agreement; he is in substance a partial assignee of Stern's obligation against the defendant. He does not sue on a quantum meruit and could not. Hence whatever makes unlawful the contract between Stern and the defendant defeats him. Thus he is in the dilemma propounded by the defendant: Either the services were not those of an attorney at law, and there was no lien; or the agreement was unlawful, and there was no pay. For these reasons I think the decree below was right.