**In re MONZA MILLS, Inc.**

**No. 129.**

**Circuit Court of Appeals, Second Circuit.**

**Dec. 11, 1944.**

Addison S. Pratt, of New York City, for appellant.

Allan D. Emil, of New York City (Morris N. Bobis, of New York City, of counsel), for respondent.

Before L. HAND, AUGUSTUS N. HAND and FRANK, Circuit Judges.

FRANK, Circuit Judge.

Brooks, a lawyer practicing "customs law" only, filed, on behalf of Monza Mills, Inc., protests against customs duties assessed on its importations of straw hats. Thereafter that company was adjudicated a bankrupt. In 1941 he, together with Samuel Stern, a customs broker and customs attorney, recovered for the bankrupt estate large refunds under these protests. They asserted a lien on the refunds in the amount of $17,656.58 which they agreed with Hirsch, the trustee in bankruptcy, to reduce to $15,100. A stipulation to that effect was entered into in the bankruptcy proceeding in April, 1941. Brooks mailed the stipulation to Emil, the attorney for the trustee, with a letter in which he, Brooks, said in part: "We have a number of claims pending on hats assessed at 25% plus an additional duty of 25¢ per dozen and other claims upon hats assessed at 25% without any additional duty, but the probability of recovery is so small in these cases that we are willing to sign this stipulation and take it up with the Referee at a later date if it develops that we can recover anything upon these pending claims."

In June, 1941, Brooks and Stern executed a general release to the trustee of all claims which they "ever had, now have or * * * shall or may have from the beginning of the world to the date of these presents."[1] Hirsch apparently considered the claims to which Brooks had referred in his letter as of no value, for he did not sell them as assets of the estate or specifically abandon them, and the estate was closed. In July, 1942, the U. S. Customs Court held, in the case of Caradine Hat Co. v. United States, 9 U.S.Cust.Ct. 69, that certain harvest hats were not subject to the additional duty of 25 cents per dozen, which had been assessed against them, but were subject only to a duty of 25% ad valorem. Some of the hats imported by the bankrupt were harvest hats (which, however, Brooks did not know until after the decision in the Caradine case) and had been assessed with the additional duty of 25 cents per dozen. Fortunately, the protests, which had been kept alive in the Customs Court, contained general claims that the hats were subject to duty at only 25% ad valorem, and Brooks now advised Emil that he believed that the pending claims (to which Brooks had referred in his letter of April, 1941) could now be successfully prosecuted. Emil told him to proceed, saying that, if he should be successful in obtaining any refunds, Emil would apply to re-open the bankruptcy proceeding so that the refunds could be paid over

---

[1] One wonders what calamity would occur if general releases covered merely the period beginning with the year 1 A. D. or the battle of Hastings.

162

to a trustee to be elected. Brooks proceeded and, in December, 1942, obtained judgment in the Customs Court in the bankrupt's favor, under which refunds, amounting to $1,859.75, were collected by him and turned over, in May and June, 1943, to the trustee (Emil in the meantime having caused the bankruptcy proceeding to be re-opened and Hirsch re-elected trustee).

Emil objected to the allowance of any compensation to Brooks for his services. There seem to have been some informal hearings before the Referee and, as it was a matter which could not be passed upon by him until notice to creditors had been given, Brooks filed a formal petition for an allowance of $929.87, or 50% of the refunds, on the ground that that was the customary fee when protests are filed on a contingent basis and the reasonable value of such services. At a formal hearing on the petition, upon due notice to all creditors, the Referee held that Brooks' right to recover was barred because of his execution of the general release. No objection was made at the hearing and no fault was found by the Referee concerning the amount of Brooks' claim if not improper because of the release, and that question was not raised on this appeal.

The District Judge entered an order confirming the Referee's action as to Brooks, saying merely, "The claimant has no standing for any allowance. The claim is also barred by the release."

We think the release had no such effect. When he gave the release, Brooks had no claim with respect to the refunds here in question. A purported release of claims not yet in existence is at most a promise to release them if they arise.[2] But here the promise was subsequently rescinded when, after the decision in the Caradine case, the trustee retained Brooks to prosecute the claims which ripened into those refunds as a result of Brooks' efforts. Brooks had a lien on the funds recovered, and his claim should therefore be allowed with interest from the dates when he turned over the refunds to the trustee. Cf. Matter of Levine's Estate, 247 App.Div. 19, 23, 286 N.Y.S. 513; Brooks v. Mandel-Witte Co., Inc., 2 Cir., 54 F.2d 992.

Reversed.

[2] We need not consider the question whether Brooks' letter was effective in reserving future possible claims, on the refunds therein referred to from the subsequent general release.