REECE FOLDING MACH. CO. v. FENWICK et al.

(Circuit Court of Appeals, First Circuit, July 7, 1905.  On Rehearing, October 17, 1905.)

No. 530.

1. CONTRACTS—SALE OF FUTURE INVENTIONS—VALIDITY.

A contract by an inventor, who has sold inventions, to disclose and assign to the purchaser any future inventions made by him for improvements thereon, is not contrary to public policy, but is valid and enforceable, if based on a valuable consideration.

2. SAME—ENFORCEMENT—ESTOPPEL.

Defendant contracted to assign to complainant any future inventions he might make in a certain art, but, on being discharged from complainant's service, regarded the contract as terminated, in which view complainant apparently acquiesced, permitting defendant to expend his time, efforts, and money in developing and exploiting new inventions in the belief that they were his own. *Held*, that complainant was estopped to claim that the new inventions so made or developed were within the contract, but that it might be entitled to a specific enforcement in relation to an invention made previously and for which an application for a patent was pending, and that it was entitled to a disclosure with respect thereto.

3. APPEAL—REHEARING.

Where a decree was reversed on appeal, and the cause remanded, with directions for a specific discovery with respect to a certain invention made by defendant and the granting of such relief as might be warranted thereby, a rehearing was denied on an averment by appellee that the facts sufficiently appear from the record to enable the court to make a final adjudication, where no such claim was made on the hearing.

Appeal from the Circuit Court of the United States for the District of Massachusetts.

Robert F. Herrick and Alfred D. White, for appellant.

Edwin N. Hill, for appellee Albert D. Fenwick.

W. Orrison Underwood (Johnson, Clapp & Underwood, on the brief), for appellees A. D. Fenwick Machine Company and George C. Vaughn.

Before COLT and PUTNAM, Circuit Judges, and ALDRICH, District Judge.

PUTNAM, Circuit Judge.  This is an appeal by the complainant from a decree dismissing its bill.  The case relates to three contracts executed by one of the defendants, Fenwick, agreeing to assign to the parties named in them improvements in inventions afterwards made by him in a certain narrow art.  The jurisdiction of the Circuit Court depends on diversity of citizenship.  The two earlier contracts were inartificially drawn.  The complainant became vested with the equitable right to them as against Fenwick.  Fenwick had received a valuable consideration for them from the parties whom the complainant succeeded, and was therefore holden to carry them out.  However, as we have said, they were irregular.  To cure this, the last contract, dated October 30, 1897, was executed.  It neither had nor named any new consideration, but it was supported by the fact that it merely

put in form the legal and equitable obligations existing between the parties.

By the last contract Fenwick agreed to assign all the inventions which he had already made, together with any which he might thereafter make, appertaining to the particular subject-matter to which the prior contracts related; that is, certain details in the manufacture of collars and cuffs. He also agreed that on demand he would sign any and all applications which should be made by the complainant for patents covering any said inventions and transfer the same to the complainant. The complainant, or its predecessors in title, agreed to bear the expense attendant upon the preparation of the applications, filing the same in the Patent Office, and making models, etc. The contract further provided that Fenwick would, on making inventions, promptly disclose them to the complainant. This bill was brought, not only to compel transfers, but also the disclosure of inventions, of which the complainant alleges it has not been informed by Fenwick. The bill does not specifically allege or suggest any invention of which it has not been informed, and Fenwick denies that there are any, and there are no proofs that there are any except as we will hereafter state.

There was no provision in the contracts for the employment of Fenwick by the other party to them. He claims, however, that there was a conversation, at the time he signed the last one, which promised him employment; that, without reason, he was discharged in the spring of 1899; and that therefore the contract was then terminated. Of course, the parol evidence of an agreement to employ him would not avail him in a suit at common law; but it might in equity, if it was clearly established, and if it appeared that his discharge involved a hardship, so that the contracts ought not to be thereafter enforced. The conversation was not, however, so definitely proved as to lay the basis for any such equitable consideration.

The defense is set up that such contracts for an indefinite period, covering inventions to be afterwards made, are against public policy. On the other hand, whether based on agreements for employment or on other valuable considerations, such contracts have been extensively made, and have never been doubted until of late. They are essential to the business of the contracting parties, and are not unjust. A person may purchase an invention, and pay therefor a very large sum, and proceed to make use of it. The inventor, according to a practice not uncommon, may subsequently overlap that invention by improvements which, though small, may be enough, in these days of sharp competition, to build up a successful hostile business. This court recognized these principles to a certain extent in Thibodeau v. Hildreth, 124 Fed. 892, 893, 60 C. C. A. 78, 63 L. R. A. 480. Therefore it is right and reasonable, and legal, that contracts of the kind in suit should be made and sustained where they relate to improvements upon inventions already purchased, as in the case at bar.

It is evident that Fenwick, on being discharged by the complainant corporation, considered that all his relations to it were ended. Thereupon he opened a place of business, or factory, of his own, and commenced inventing and building on his own interest and behalf. We

are satisfied that the respondent seasonably understood the claim and position of Fenwick in these particulars. It appears that in the autumn of 1899, six months after he had been discharged, Fenwick came to the principal office of the complainant corporation, and told its officers that he was building pasting machines, with which this case has no concern, and that he had begun preparations to build a new folding machine, to which class of machines the contracts in the record specifically related, and that he had not sufficient capital for developing and exploiting it. He asked the representatives of the complainant to enter into an arrangement with him for exploiting the pasting machine and the new folding machine. The conversation shows that they simply turned their backs on Fenwick. The fact is that we are compelled to conclude that the complainant acquiesced in Fenwick's belief that his relations to it had entirely ceased, and that whatever he was doing in the way of making inventions was on his own account and behalf. In other words, the conversation shows that they acquiesced in his understanding that what he was then doing was in his own right, and that the complainant had no claim in reference thereto, unless a new arrangement was made, which new arrangement they refused to enter into. This conversation is fully testified to by Fenwick. Cady, the treasurer of the corporation, adversely interested, was called as a witness, and in no manner contradicted or limited the effect of Fenwick's testimony.

Inasmuch as Fenwick thereafterwards expended his time, efforts, and money on the faith of the mutual understanding thus expressed by each party, equity cannot give the complainant relief with regard to any inventions on which Fenwick thus expended his time, efforts, and money, with reference to developing and exploiting them, subsequently to the conversation referred to.

It is true that by the contract with Fenwick the respondents were not required to exploit all his inventions, and that they had an option with reference thereto, so that the mere refusal to exploit any particular invention would not have affected the general condition. But the proofs establish sufficiently that, as we have said, Fenwick understood that his relations under the contract had terminated, and that the complainant acquiesced in that understanding to at least the extent we have stated. Of course, it is not contended that this affected the complainant's right to inventions made by Fenwick before the conversation of 1899, and which he had not exploited. The precise line of demarcation will be practically illustrated as we proceed. In other words, the terms of the contract between the parties remained in force in law and equity, so far at least as concerns any invention within its purview prior to the conversation in the autumn of 1899, on which Fenwick had not expended his time, efforts, or money in developing and exploiting the same to any substantial extent after that conversation.

So far the case involves mere questions of fact of such a peculiar nature that it is improbable that like questions will ever be developed in any subsequent litigation. Therefore nothing would be gained by our stating details in reference thereto, or giving the impressions which, except as looked at as a whole, the numerous facts have made on our minds. We, however, are now brought to certain legal proposi-

tions underlying the application of the facts we have stated. Neither the bill nor the proofs suggest any invention, except one which was covered originally by a certain application for a patent, which application was afterwards divided. One branch of it resulted in a patent issued to Fenwick on December 10, 1901, No. 688,460, for improvements in machines for folding collars and cuffs. It is not denied, and it is sufficiently established by Fenwick, that the invention or inventions represented by the original application before it was divided, and, of course, the invention as represented by the subsequent divisional applications were conceived and made by him while in the employment of the complainant, or of its predecessors in title; so that, except for the fact that the exploiting and development of this invention, so far as it is represented by patent No. 688,460, occurred after the conversation in the autumn of 1899, we might be required to compel the respondents to transfer that patent to it. While, for reasons already stated, we are of the opinion that, inasmuch as the cost of developing and exploiting that patent was borne by Fenwick after the conversation of the autumn of 1899, the complainant is not entitled to relief in reference thereto, yet we have not the burden of ultimately determining that question, because the complainant says that the patent is of no value to it and waives all claim to it. There remains, however, the other branch of the invention, to which we have referred, represented by the divisional application No. 47,440½. Whatever this application represents, apparently it belongs in equity to the complainant, although, on account of the substance of the application not being disclosed by the record, it is impossible for us to adjudicate definitely with regard to it. It is enough for us to say that the record exhibits in behalf of the complainant a prima facie case, which entitles it to a full disclosure in reference thereto. Equity should direct specific performance to that extent, leaving, however, the full consideration of the merits to be determined thereafterwards. This divisional application was put in interference; and the complainant maintains that, being in interference, it is impossible for it under the rules of the Patent Office to ascertain its essential features, and that, by reason of the slow progress given the interference by the parties thereto, the possibility of such ascertainment is indefinitely postponed. In view of those rules there may be some difficulty in the path of obtaining a full disclosure even by suit, which must be met by the Circuit Court as the case further develops.

As we have already said, the bill alleges in general terms several supposed inventions, without any specification with reference thereto. The record contains no proofs nor suggestions of any inventions to which the contract can relate, except what we have already particularized. The complainant is not entitled to relief beyond what its case exhibits or suggests according to its allegations and its proofs; and, so far as it fails to prove anything, it cannot claim relief. We are not justified in granting an order in the air for a discovery, involving parties in the hazards of ascertaining whether their proceedings may be in contempt or not. Swift & Co. v. United States, 196 U. S. 375, 402, 25 Sup. Ct. 276, 49 L. Ed. 518. Therefore relief, so far as the complainant is entitled to any, is necessarily limited to a disclosure of the

invention to which the application No. 47,440½ relates, and any further relief in reference to that invention to which he may be entitled after that disclosure is made.

Both parties urge laches, but there is nothing on which to base such a proposition with reference to the pending divisional application, and the disposition which we have directed with reference to patent No. 668,460, obviates that topic, so far as that patent is concerned. Various other minor propositions are made by the parties, but they are so clearly unsustainable that they do not require any attention from us.

The result which we have reached necessitates, of course, inquiries which must be made by the Circuit Court. In shaping the inquiries, it should be remembered that, independently of any stipulation in the contract providing for discovery, the complainant would be entitled to it on the general principles of equity. Therefore the Circuit Court is at liberty to proceed in either aspect, remembering, however, that to a certain extent whatever interlocutory decrees, or decretal orders, may be made, will be without prejudice to the merits, as we have already stated. The Circuit Court, on an investigation, may conclude that the inquiries could be made by permitting further interrogatories on the part of the complainant, following to a certain extent the analogy of equity rule 18, or, perhaps, proceeding without reference to that analogy; or it may find it prudent to direct formal inquiries, with a reference for that purpose to a master. The decretal order may, perhaps, have regard to Sharp v. Taylor, 2 Phil. Ch. 801, 809, where the directions were specifically "without prejudice to any question in the cause." This precedent must be regarded as sufficiently authoritative, because it came from the hand of Vice Chancellor Wigram, and because it has been acquiesced in, and never been questioned, as evidenced by the note of Mr. Perkins and Mr. Cooper to Daniell's Chancery Practice (6th Am. Ed.) *2185. All such details, and all other details as to the further development of the cause, we, for the reasons stated, necessarily leave to the Circuit Court.

The decree of the Circuit Court is reversed, the case is remanded to that court for further proceedings not inconsistent with our opinion passed down this day, and the appellant recovers its costs of appeal.

## On Petition For Rehearing.

PUTNAM, Circuit Judge. This is a petition for a rehearing, brought by the appellees, who were the respondents below. Our opinion to which this petition relates was passed down on July 7, 1905, and was accompanied by a judgment which remanded the case for further proceedings not inconsistent with it. The proceedings directed by the opinion were in substance in the first place for discovery, and in the second place for relief if the discovery justified it; the order for discovery to be without prejudice to any question in the cause. We stated in the opinion that, on the existing record, it was impossible for us to adjudicate definitely with reference to the matter as to which we directed discovery, and we also entered judgment for costs of appeal in favor of the appellant. It is plain that the discovery which we regarded necessary could be obtained only by remanding the case to the Circuit

Court, and that, under the law organizing this court, it was impracticable for us to take ourselves proceedings in the required direction.

The petition for a rehearing now maintains that everything which could be secured by discovery is apparent on the face of the record. No proposition of this character, however, was brought to the attention of the court when the case was tried before us. The respondents rested entirely on propositions as to the general validity or invalidity of the contracts involved in the case, with further propositions that the contracts had been abandoned and that the complainant was guilty of laches; and this petition admits that it is based on grounds to which the attention of this court had not previously been directed. It is probable, from the nature of the matter as to which we ordered discovery, which was the description of an alleged invention, that, even though a description might have been collected from various portions of the record, it could not have been so collected as to leave it in the precise and clear form required for the purpose of correct adjudication. Certainly we were not called on to do this of our own motion. However these things may be, inasmuch as the appellees cannot be prejudiced on the merits by the judgment which we entered, and as nothing is involved except the costs of appeals, and as the petition admittedly relates to matters to which the petitioners did not call our attention at the trial, though they then had an opportunity to do so, we ought not to be troubled with a proposition to go again over this record in the present condition of the case.

The petition for a rehearing filed by the appellees on October 3, 1905, is denied, and the mandate will issue forthwith.