## N. V. MONTAN EXPORT–METAAL HANDEL–MAATSCHAPPIJ v. UNITED STATES.
### No. 50119.

United States Court of Claims.
March 4, 1952.

Roberts B. Larson, Washington, D. C., (John Ward Cutler, Washington, D. C., on the brief), for plaintiff.

Carl D. McManamy, Washington, D. C., Holmes Baldridge, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

LITTLETON, Judge.

The plaintiff, a corporation of the Netherlands, brings this action under Section 1498, U.S.C., Title 28, effective September 1, 1948, to recover compensation for the alleged unauthorized use and manufacture by or for the United States of foldable spade and hoe devices embodying the inventions covered by a United States patent which plaintiff claims it rightfully owns. The petition alleges that plaintiff's cause of action accrued in the following manner.

On November 30, 1935, Emmerich Hoffmann, a Hungarian inventor, filed an appli-

cation for United States Letters Patent, Serial No. 52,333, on a foldable spade and hoe implement. While this application was pending, Hoffmann, on October 29, 1936, at The Hague, Netherlands, entered into a written agreement with plaintiff granting it certain exclusive and valuable rights in and to the patent and, in addition, providing that title to the patent, after issuance, should be assigned and transferred to plaintiff's name. Thereafter, United States Letters Patent No. 2,095,549 was duly issued to Hoffmann on October 12, 1937, but the assignment to plaintiff was never recorded in the U. S. Patent Office.

In 1941, at the time of the outbreak of war with Germany and Hungary, Hoffmann continued to appear upon the records of the Patent Office as the holder and owner of title to this patent. Consequently, the Alien Property Custodian, acting pursuant to the authority conferred upon him by the Trading with the Enemy Act, 40 Stat. 411, 50 U.S.C.A.Appendix § 1 *et seq.*, and Executive Order 9095, 7 F.R. 5205, as amended, 50 U.S.C.A.Appendix, § 6 Note, issued Vesting Order No. 201, 8 F.R. 625, on October 2, 1942, which seized all Hoffmann's "right, title, and interest" in this patent as property belonging to an alien enemy. Plaintiff alleges that thereafter the Department of the Army, without the license of plaintiff, had great numbers of foldable spade and hoe devices based on the invention contained in the Hoffmann patent manufactured for use by the United States Government. Although plaintiff was not subjected to enemy control during the war, having withdrawn from the Netherlands prior to the German occupation, and transferred its domicile to Willemstad-Curacao, it remained unaware that the patent had been seized by the Alien Property Custodian until July 1949. Consequently, no steps were taken by plaintiff before the Custodian or in court to protect its rights in the patent against infringement from the date of the Vesting Order, October 2, 1942, until April 20, 1951, when plaintiff instituted this suit.

The Government has moved to dismiss the plaintiff's action on the ground that the petition fails to show that plaintiff is entitled to any remedy or relief which this court

may grant. We think that this contention is well-taken. Plaintiff at the present time cannot comply with the requirements of § 1498 of Title 28, supra, because it is not currently the owner of record of the patent in question. Section 1498, supra, which contains the consent of the United States (first granted in 1910) to be sued for patent infringement, provides in pertinent part as follows: "Whenever an invention described in and covered by a patent of the United States is used or manufactured by or for the United States without license of the owner thereof or lawful right to use or manufacture the same, *the owner's remedy* shall be by action against the United States in the Court of Claims for the recovery of his reasonable and entire compensation for such use and manufacture." [Emphasis added.]

In order for this court to entertain plaintiff's suit under § 1498, it would be necessary for us to determine first that the Alien Property Custodian, acting pursuant to the Trading with the Enemy Act, improperly vested the patent in question and that plaintiff, a friendly alien, is in fact the owner thereof, and is entitled to its return. However, it is important to bear in mind that this court has only such jurisdiction as is conferred upon it by statute, and under the Trading with the Enemy Act the power to determine whether the Alien Property Custodian improperly seized certain property is exclusively conferred upon another tribunal. Paragraph 4 of § 7(c) of the Trading with the Enemy Act provides as follows: "The sole relief and remedy of any person having any claim to any money or other property heretofore or hereafter conveyed, transferred, assigned, delivered, or paid over to the Alien Property Custodian, or required so to be, or seized by him shall be that provided by the terms of this Act * * *."

The remedy provided by the Act which was and is available to plaintiff is contained in § 9(a), which provides in pertinent part as follows: "Any person not an enemy or ally of enemy claiming any interest, right, or title in any money or other property which may have been conveyed, transferred, assigned, delivered, or paid to the Alien

Property Custodian or seized by him hereunder * * * may file with the said custodian a notice of his claim under oath and in such form and containing such particulars as the said custodian shall require; and the President, if application is made therefor by the claimant, may order the payment, conveyance, transfer, assignment, or delivery to said claimant of the money or other property so held by the Alien Property Custodian or by the Treasurer of the United States, or of the interest therein to which the President shall determine said claimant is entitled: *Provided,* That no such order by the President shall bar any person from the prosecution of any suit at law or in equity against the claimant to establish any right, title, or interest which he may have in such money or other property. If the President shall not so order within sixty days after the filing of such application or if the claimant shall have filed the notice as above required and shall have made no application to the President, said claimant may institute a suit in equity in the Supreme Court of the District of Columbia or in the district court of the United States for the district in which such claimant resides, or, if a corporation, where it has its principal place of business (to which suit the Alien Property Custodian or the Treasurer of the United States, as the case may be, shall be made a party defendant), to establish the interest, right, title, or debt so claimed, and if so established the court shall order the payment, conveyance, transfer, assignment, or delivery to said claimant of the money or other property so held by the Alien Property Custodian * * *.

■ The constitutionality of the provisions in these and other sections of the Trading with the Enemy Act, permitting the seizure and sequestration of property believed to be enemy-owned, has been considered at length and sustained in Central Union Trust Co. v. Garvan, 254 U.S. 554, 41 S.Ct. 214, 65 L.Ed. 403. The authority for such provisions was rested in general upon Article I, § 8, cl. 11, of the Constitution which empowers Congress "To declare War, grant Letters of Marque and Reprisal, and make Rules concerning Captures on Land and Water", and specifically upon the language relating to "Rules concerning Captures on Land." Stoehr v. Wallace, 255 U.S. 239, 41 S.Ct. 293, 65 L.Ed. 604. In exercising his powers of seizure the Alien Property Custodian is not restrained by the due process or just compensation requirements of the Constitution. Cummings v. Deutsche Bank, 300 U.S. 115, 57 S.Ct. 359, 81 L.Ed. 545; North German Lloyd v. United States, 61 Ct.Cls. 138. Likewise, the existence of the single remedy provided by the Act to correct mistaken seizures has been construed to be adequate. Stoehr v. Wallace, supra, and its effect is to exclude all other courts, including the Court of Claims, from exercising jurisdiction over claims to seized property. Clark v. Uebersee Finanz-Korporation, 332 U.S. 480, 68 S.Ct. 174, 92 L.Ed. 880; Escher, Adm'r, v. United States, 68 Ct.Cls. 473; certiorari denied 281 U.S. 752, 50 S.Ct. 353, 74 L.Ed. 1163. The possibility that this court might possess jurisdiction under the Act was recently reargued in detail in Duisberg v. United States, 89 F.Supp. 1019, 116 Ct.Cls. 861, but without any change in conclusion.

Plaintiff, however, insists that it need not avail itself of the remedy under § 9(a) because, by virtue of the 1935 assignment by Hoffmann, it became the full owner of all rights in the patent, and consequently, the Alien Property Custodian in fact vested nothing when he purported to vest the patentee Hoffmann's right, title, and interest. Likewise, plaintiff insists that the Alien Property Custodian possessed nothing which could be returned if plaintiff were to present a claim in the manner required by § 9(a). However, the fallacy in this argument of plaintiff lies in the fact that at the time of the vesting Hoffmann, rather than plaintiff, held the title of record to the patent in suit, and that insofar as the official Patent Office records were concerned, the Alien Property Custodian succeeded to all the rights of Hoffmann. Under circumstances such as existed here, the Alien Property Custodian had no way of knowing of the existence of plaintiff's alleged rights, and hence was fully authorized to seize summarily the patent in suit. That mistaken seizures would occur because of circumstances unknown to the Alien Property

Custodian was apparent, and accordingly Congress provided in § 9(a) a remedy for just such occurrences. Congress had the right to prescribe, as it did in § 9(a), the *sole* manner in which mistakes could be corrected, and we therefore think that plaintiff must pursue the remedy provided. Until plaintiff takes these steps to remedy the mistake, the vesting continues to be lawful, and the Alien Property Custodian continues to be the owner of record of the patent. The statement of the Court in Becker Steel Co. v. Cummings, 296 U.S. 74, 79, 56 S.Ct. 15, 18, 80 L.Ed. 54, seems to completely dispose of plaintiff's argument. In discussing erroneous vestings the Court said: "Section 7 of the Trading with the Enemy Act conferred on the Alien Property Custodian authority summarily to seize property upon his determination that it was enemy owned, and such a seizure was lawful even though the determination were erroneous. Central Union Trust Co. v. Garvan, 254 U.S. 554, 41 S.Ct. 214, 65 L.Ed. 403; Stoehr v. Wallace, 255 U.S. 239, 41 S.Ct. 293, 65 L.Ed. 604; Commercial Trust Co. v. Miller, 262 U.S. 51, 43 S.Ct. 486, 67 L.Ed. 858. But in thus authorizing the seizure of property as a war measure Congress did not attempt the confiscation of the property of citizens or alien friends. See Henkels v. Sutherland, supra, 271 U.S. 298, 301, 46 S.Ct. 524, 70 L.Ed. 953. Instead by section 9(a) it gave to the nonenemy owner the right to maintain a suit for the recovery of the seized property or its proceeds, and at the same time, by the all-inclusive language of section 7(c) it denied to him any other remedy."

We therefore conclude that plaintiff, despite its allegations of ownership of the patent in suit, is merely in the position of a claimant of an interest in a patent vested by the Alien Property Custodian as property belonging to an alien enemy; that as such a claimant, plaintiff must avail itself of the remedy provided by Congress in the Trading with the Enemy Act; and that the remedy so provided by § 9(a) is exclusive and expressly denies this court jurisdiction to determine plaintiff's claim.

For the above stated reasons, the defendant's motion to dismiss is granted, and plaintiff's petition is dismissed for want of jurisdiction. It is so ordered.

JONES, Chief Judge, and HOWELL, MADDEN and WHITAKER, Judges, concur.