**DORR–OLIVER, INCORPORATED**

v.

**The UNITED STATES, Defendant,**

**COMANCO, INCORPORATED and Lockheed Aircraft, Incorporated, Third-Party Defendants.**

**No. 130–68.**

United States Court of Claims.

Oct. 16, 1970.

William C. Conner, New York City, attorney of record, for plaintiff; J. Dennis Malone, Stamford, Conn., of counsel.

Paul F. Arseneau, Washington, D. C., with whom was Asst. Atty. Gen. William D. Ruckelshaus, for defendant.

Albert L. Carter, Marietta, Ga., attorney of record for Lockheed Aircraft Corporation.

Paul Matzko, Philadelphia, Pa., attorney of record for Comanco, Incorporated.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COL-

LINS, SKELTON and NICHOLS, Judges.

## OPINION

### PER CURIAM:

This case was referred to Trial Commissioner James F. Davis with directions to make findings of fact and recommendation for conclusions of law under the order of reference and Rule 134(h). The commissioner has done so in an opinion and report, on the issue as to when plaintiff became the "owner" of the patent, within the meaning of § 1498 of 28 U.S. C., filed May 7, 1970. On June 1, 1970 defendant filed a notice of intention to except to the commissioner's report. However, on August 18, 1970, there were filed defendant's withdrawal of its notice of intention to except, a joint motion of plaintiff and defendant under Rule 141(b) requesting the court to adopt the commissioner's opinion, findings of fact, and recommendation for conclusion of law (on the severed issue of ownership of U. S. Patent No. 3,243,062), and a stipulation by plaintiff and defendant pertaining to evidence and testimony to be presented in further proceedings before the commissioner. In view of the above, no exceptions having been filed by any party and the time for so filing under the Rules of the court having expired, the case has been submitted to the court without oral argument. Since the court agrees with the commissioner's opinion, findings of fact and recommended conclusion of law, it hereby adopts the same, as hereinafter set forth as the basis for its judgment in this case. Therefore, it is concluded that plaintiff is and, at all times since March 29, 1966, has been the owner of U. S. Patent 3,243,062, within the meaning of 28 U.S.C. § 1498, and the case is remanded to the trial commissioner for further appropriate proceedings.

## OPINION OF COMMISSIONER

DAVIS, Commissioner:

This is a patent suit under 28 U.S.C. § 1498. The patent in issue relates to cargo trailers. It was granted to plaintiff on March 29, 1966, on an application filed in the U. S. Patent Office by Bruno S. Frassetto on March 20, 1964. The petition was filed in this court on April 24, 1968. The only issue now before the court is when plaintiff became the "owner" of the patent, within the meaning of § 1498.[1] Plaintiff says it has owned the patent since its date of issuance (March 29, 1966). Defendant says that plaintiff has owned the patent only since October 21, 1968, a date with significance later noted, and is not entitled to recover for any Government infringement prior to that date. For reasons below discussed, it is held that plaintiff has owned the patent since it issued and has had standing since then to sue in this court as "owner." The pertinent facts are stipulated and are summarized below.

### Background

Frassetto, an engineer, was employed by American Machine & Foundry Company (AMF) from 1951 to 1963. He worked on development of missile and space vehicle handling equipment, exercising both engineering and managerial duties. In 1951, he signed an agreement with AMF which, in essence, required him to assign to AMF all inventions made by him in AMF's line of business during his tenure of employment and for *one year thereafter*. In 1963, Frassetto left AMF and went to work for Dortech, Incorporated, a subsidiary of plaintiff. Later that year, he invented an improved trailer for transporting palletized cargo. A patent application describing and claiming the trailer was filed in 1964, and it matured into the patent in suit. Pursuant to an employment contract

1. 28 U.S.C. § 1498 says in pertinent part:
   (a) Whenever an invention described in and covered by a patent of the United States is used or manufactured by or for the United States without license of the *owner* thereof * * *, the *owner's* remedy shall be by action against the United States in the Court of Claims for recovery of his reasonable and entire compensation for such use and manufacture. (Emphasis added.)

with Dortech, Frassetto assigned the patent to plaintiff which has been record titleholder since issuance. The parties agree that the invention was conceived and reduced to practice while Frassetto was working for Dortech in September and October 1963, a time within one year after Frassetto left AMF. Frassetto never worked on cargo trailers at AMF, though AMF made cargo trailers in 1962, about a year before Frassetto left AMF. So far as the record here shows, Frassetto knew nothing about the trailers and had nothing to do with their manufacture.

Soon after plaintiff filed its petition in this court, defendant moved to dismiss on grounds that the Frassetto patent is not owned by plaintiff, but rather is the rightful property of AMF. Defendant recognized that plaintiff is and always has been legal titleholder of the patent, but noted the 1951 AMF-Frassetto employment contract and argued that by its terms, AMF rightfully owns the patent, is "the real party in interest," and that accordingly plaintiff "possesses no ownership interest in the patent sufficient to support a suit against the Government, or grant the Court jurisdiction under 28 U.S.C. § 1498." Defendant also pointed out that during administrative claim proceedings in 1966-67 between plaintiff and defendant's Defense Supply Agency, AMF alleged ownership of the patent by reason of the 1951 employment agreement. AMF became involved in the administrative proceedings because it was a potential indemnifier for accused devices it supplied to the Government. On September 26, 1968, defendant withdrew its motion to dismiss in favor of a joint motion of the parties (a) to bring in AMF as a party-plaintiff in order to resolve the patent ownership issue, and (b) to sever that issue for separate trial.

At this juncture, plaintiff and AMF negotiated between themselves to resolve the ownership problem. By agreement dated October 21, 1968, AMF assigned to plaintiff "any and all claims of ownership of the Frassetto patent." The agreement recognized that plaintiff was "record title holder" of the patent; that AMF "alleged a claim of ownership of said patent"; and that AMF was "willing to assign such claim" to plaintiff. Plaintiff, in turn, agreed to pay AMF 10 percent of the monies "actually received" in this suit and granted to AMF a "non-exclusive, royalty-free, irrevocable, non-transferable license" under the patent. On November 1, 1968, plaintiff's counsel filed a paper styled "Verified Notice of Resolution of Issue," which noted the above agreements and suggested that the ownership issue was moot. On January 10, 1969, AMF, by virtue of its license under the patent, granted to the United States the right to use, royalty-free, any accused devices supplied to the United States by AMF; and on January 13, 1969, AMF moved to be dismissed on grounds that it no longer claimed ownership of the patent and, furthermore, was no longer liable to the United States as an indemnifier.

■ At this point, defendant moved to limit plaintiff's recovery period to times after October 21, 1968. Defendant contended that the October 21, 1968 agreement between plaintiff and AMF was in fact a patent "assignment"; and that by virtue of the anti-assignment statute (31 U.S.C. § 203), plaintiff is precluded from recovering for any past infringement by the Government, citing Brothers v. United States, 52 Ct.Cl. 462, 466 (1917), aff'd, 250 U.S. 88, 39 S.Ct. 426, 63 L.Ed. 859 (1919).[2] By order dated February 6, 1969, the trial commissioner denied the Government's motion, stating that the purported "assignment of claim of patent ownership" executed by plaintiff and AMF on October 21, 1968, was "in the nature of a quitclaim," was not an "assignment of the

2. The *Brothers* case held, among other things, that the anti-assignment statute, section 3477, Revised Statutes (now 31 U.S.C. § 203) prohibits the assignment of

any claim for patent infringement against the United States which arose prior to the time a plaintiff acquired title to the patent.

ownership" of the patent, and was not a "transfer or assignment of a claim upon the United States" within the meaning of 31 U.S.C. § 203. Furthermore, the commissioner severed the issue of ownership for separate trial. On April 14, 1969, the court denied defendant's request for review of the commissioner's order, "without prejudice to renewal after the issue of patent ownership is determined." The parties then filed stipulated facts and documents as the basis for resolution by this court of the ownership issue.

*The ownership issue*

■■ At the outset, it is pertinent to note that the owner of record title of a patent is the proper party to bring suit in this court under 28 U.S.C. § 1498. N. V. Montan Export-Metaal Handel-Maatschappij v. United States, 102 F. Supp. 1016, 122 Ct.Cl. 42 (1952). This would appear to end the matter, for plaintiff has been record owner of the patent from the beginning. However, defendant says that AMF had superior equities in the invention and patent up to October 21, 1968, and thus was the "owner" within the meaning of the statute. In patent litigation between private parties, equitable rights of ownership of strangers to the suit cannot be raised as defenses against the legal titleholder of a patent. Sigma Eng'r Service, Inc. v. Halm Instr. Co., 33 F.R.D. 129 (E.D. N.Y.1963), and cases cited therein. Thus, if defendant were a private party, its contention would be dismissed without fanfare. However, the anti-assignment statute raises a problem not present in private litigation. For if, in fact, AMF was "owner" of the patent up to October 21, 1968, plaintiff cannot recover for Government infringement prior to that date. *Brothers, supra;* LeFiell v. United States, 162 Ct.Cl. 865 (1963). It is therefore necessary to decide whether there is any merit to defendant's argument that AMF was the "owner" of the patent prior to October 21, 1968.

The inquiry focuses on the 1951 AMF–Frassetto employment contract. The contract obligated Frassetto to use his best efforts to "invent, design and improve machines, implements, appliances, methods, products and systems relating to or useful in connection with the following subject matter, namely: the machinery and devices and other products of the various kinds made, used and sold by you [AMF] heretofore or hereafter during my employ." The agreement further required that Frassetto "promptly communicate and disclose to you [AMF] * * * all inventions and improvements relating to your business and in connection with the subject matter above named, originated by me solely or jointly with others during the term of my employment and *during a period of one year after termination thereof* * * *;*" the italicized phrase being a so-called "hold-over" clause. AMF, in turn, agreed to pay Frassetto a bonus of $100 for each invention "upon execution by me [Frassetto] of all necessary patent applications, assignments and other documents so transferring any such invention to you [AMF]."

Defendant contends that AMF manufactured cargo trailers in 1962 while Frassetto was an employee; that the improved cargo trailer of the Frassetto patent, though different from the AMF trailer, is nevertheless "subject matter" within the scope of the contract; that the invention was made by Frassetto within the one-year hold-over period; and that, by operation of the contract, AMF thus "owned" the invention and patent, at least up to October 21, 1968. Plaintiff says, on the other hand, that under no reasonable construction of the contract can AMF be deemed ever to have owned or had any rights to the invention or the patent. Plaintiff notes, and defendant does not dispute, that Frassetto never worked on cargo trailers at AMF; that Frassetto's invention was made while he worked for Dortech with Dortech funds and on Dortech time; and that, in any event, the one-year hold-over clause has never been enforced by AMF and, indeed, was dropped from subsequent AMF employment contracts. Plaintiff also points out that AMF's line of business embraces many and

diverse products, and that the meaning of "subject matter" in the contract must be limited to those areas of technical endeavor in which Frassetto actually worked at AMF. The issue, then, is simply whether the hold-over clause of the 1951 contract operated to make AMF "owner" of the invention and patent.

■ Hold-over clauses in employment contracts are enforceable only if they constitute a reasonable and justifiable restriction on the right of employees to work in their profession for subsequent employers. Guth v. Minnesota Mining & Mfg. Co., 72 F.2d 385 (7th Cir. 1934); IV Walker, Patents § 374 (Deller's 2d ed. 1965). See also Knoth, Assignment of Future Inventions, 27 Chi.-Kent L.Rev. 295 (1949). Their legitimate purpose is to prevent an employee from appropriating to his own use or to the use of a subsequent employer inventions relating to and stemming from work done for a previous employer. Hold-over clauses are simply a recognition of the fact of business life that employees sometimes carry with them to new employers inventions or ideas so related to work done for a former employer that in equity and good conscience the fruits of that work should belong to the former employer. In construing and applying hold-over clauses, the courts have held that they must be limited to reasonable times (Guth, supra) and to subject matter which an employee worked on or had knowledge of during his employment. Universal Winding Co. v. Clarke, 108 F.Supp. 329 (D.Conn.1952). Unless expressly agreed otherwise, an employer has no right under a hold-over clause to inventions made outside the scope of the employee's former activities, and made on and with a subsequent employer's time and funds. Gas Tool Patents Corp. v. Mould, 133 F.2d 815 (7th Cir. 1943).

■ Under the facts here, it is clear that AMF was never entitled to rights to the patent in suit. Frassetto never worked on cargo trailers at AMF, nor does the record show that he had knowledge of AMF's activities relating to cargo trailers. It is therefore not reasonable under the circumstances to include cargo trailers as part of the "subject matter" which Frassetto agreed to assign back to AMF within one year after termination of his employment. Furthermore, the record shows, and defendant concedes, that the invention was conceived and reduced to practice while Frassetto worked for Dortech, on Dortech's time and with Dortech's money. Indeed, AMF has never sought to enforce the hold-over clause against Frassetto and has waived whatever rights it might have thereunder, factors which weigh heavily in construing the scope of the employment contract. Cf. Reece Folding Mach. Co. v. Fenwick, 140 F. 287 (1st Cir. 1905). In sum, AMF has never been legal or equitable owner of the Frassetto patent; and plaintiff, as legal and equitable titleholder, has had standing to sue in this court from the date the patent issued.

■ Finally, contrary to defendant's arguments, plaintiff's agreement of October 21, 1968, to pay AMF 10 percent of the monies recovered in this suit does not violate the anti-assignment statute. The consideration for the agreement was simply a waiver by AMF of whatever rights it might have under the AMF–Frassetto employment contract, a transaction characterized earlier in this suit by the trial commissioner as "in the nature of a quitclaim." The agreement simply creates contract rights between plaintiff and AMF and does not give AMF a lien on any recovery against the United States. See Nutt v. Knut, 200 U.S. 12, 26 S.Ct. 216, 50 L.Ed. 348 (1906); Pittman v. United States, 116 F.Supp. 576, 127 Ct.Cl. 173 (1953), cert. denied 348 U.S. 815, 75 S.Ct. 23, 99 L. Ed. 642 (1954).